IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

GUN OWNERS OF AMERICA, INC.,
GUN OWNERS FOUNDATION, and
RICHARD HUGHES,

    Plaintiffs,

v.

SHERIFF KEITH PEARSON, in his official capacity as Sheriff of St. Lucie County, the ST. LUCIE COUNTY SHERIFF'S OFFICE, THOMAS BAKKEDAHL, in his official capacity as the State Attorney for the 19th Judicial Circuit of Florida, and the STATE ATTORNEY'S OFFICE for the 19th Judicial Circuit of Florida,

    Defendants.
_____/

CASE NO.:   2:24-cv-14250-JEM
DIVISION:

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY AND INCORPORATED MEMORANDUM OF LAW

Defendant, THOMAS R. BAKKEDAHL in his official capacity as State attorney for the Nineteenth Judicial Circuit of Florida, and on behalf of the STATE ATTORNEY'S OFFICE for the 19th Judicial Circuit of Florida, by and through the undersigned counsel, pursuant to Federal Rules of Civil Procedure Rule 12(b), hereby files this Motion to Dismiss or, in the alternative, Motion to Stay Plaintiffs' Complaint for Declaratory and Injunctive Relief for failure to state a claim upon which relief can be granted, 28 U.S.C. § 2201(a), and legal framework in *Bruen*, and memorandum of law, and in support thereof states:

### STATEMENT OF FACTS

1.    Plaintiffs filed a Complaint for Declaratory and Injunctive Relief against Defendant STATE ATTORNEY THOMAS R. BAKKEDAHL in the Nineteenth Judicial Circuit of Florida,

and the STATE ATTORNEY'S OFFICE for the 19th Judicial Circuit of Florida, as well as Sheriff Keith Pearson, in his official capacity as Sheriff of St. Lucie County, and the St. Lucie County Sheriff's Office.

2. Within Plaintiffs' Complaint, Plaintiffs allege that Fla. Stat. § 790.053 (1) violates the Second and Fourteenth Amendments to the U.S. Constitution. See Plaintiff's Complaint, ¶ 111.

3. The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

4. Moreover, the Florida Constitution states:

SECTION 8.   Right to bear arms.—
(a)   The right of the people to keep and bear arms in defense of themselves and of the lawful authority of the state shall not be infringed, except that the manner of bearing arms may be regulated by law.
(b)   There shall be a mandatory period of three days, excluding weekends and legal holidays, between the purchase and delivery at retail of any handgun. For the purposes of this section, "purchase" means the transfer of money or other valuable consideration to the retailer, and "handgun" means a firearm capable of being carried and used by one hand, such as a pistol or revolver. Holders of a concealed weapon permit as prescribed in Florida law shall not be subject to the provisions of this paragraph.
(c)   The legislature shall enact legislation implementing subsection (b) of this section, effective no later than December 31, 1991, which shall provide that anyone violating the provisions of subsection (b) shall be guilty of a felony.
(d)   This restriction shall not apply to a trade in of another handgun.

5. Fla. Stat. § 790.053 (1) states:

Except as otherwise provided by law and in subsection (2), it is unlawful for any person to openly carry on or about his or her person any firearm or electric weapon or device. It is not a violation of this section for a person who carries a concealed firearm as authorized in s. 790.01(1) to briefly and openly display the firearm to the ordinary sight of another person, unless the firearm is intentionally displayed in an angry or threatening manner, not in necessary self-defense.

## **MOTION TO DISMISS STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Courts must accept all factual allegations as true and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**MEMORANDUM OF LAW**

**I. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED AS PLAINTIFFS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED AS PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTUAL MATTER AND INSTEAD PLEAD CONCLUSORY ALLEGATIONS, UNWARRANTED FACTUAL DEDUCTIONS AND/OR LEGAL CONCLUSIONS.**

Despite the fact that Courts must accept all factual allegations as true and view the facts in a light most favorable to the plaintiff under the Federal Standard of Review, a significant amount of Plaintiffs' Complaint presents conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts rather than sufficient factual matter to warrant survival. See Plaintiffs' Complaint ¶ 4, 5, 32, 33, 34, 35, 36, 37, 38, 43, 44, 45, 47, 48, 49, 50, 51, 52, 67, 68, 69, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 103, 104, 105, 107, 108, 109, 110. Specifically, Plaintiffs' Statement of Facts is a legal argument regarding the interpretation of the words contained in the Second and Fourteenth Amendments of the U.S. Constitution, applicability of court decisions and the various conflicting standards of review for challenges to open and concealed carry regulations, and discussions regarding historical precedents rather than specific factual content that would support the notion that Fla. Stat. § 790.053 (1) violates their constitutional right to bear arms. Interestingly, the "Statement of Facts" is organized as follows:

    a. The Second Amendment.
    b. Florida's Prohibition on Openly Carrying Firearms in Public.
        a. The Racist History of Florida's Open Carry Ban.
        b. Florida's Modern Open Carry Ban.
        c. Florida's Open Carry Ban Is Unconstitutional
            1. Norman v. State Is No Longer Good Law.
            2. Applying Heller, Bruen, and Rahimi, Florida's Open Carry Ban Is Unconstitutional.
                a. Florida's Open Carry Ban Violates the Plain Text of the Second Amendment.
                b. In Addition to Being Atextual, Floria's Open Carry Ban Is Ahistorical

      c.  Like the Flat Ban on a Manner of Keeping in Heller, a Flat Ban on a Manner of Bearing Is Per Se Invalid.

See Plaintiffs' Complaint ¶ 28-96. Most notably, Plaintiffs' final paragraphs specifically state:

> "Therefore, Fla. Stat. § 790.053 (1) is presumed unconstitutional and Defendants bear the burden of proving that the statute's prohibition on open carry is consistent with this nation's historical tradition of firearm regulation…Defendants cannot meet their burden… Fla. Stat. § 790.053 (1) violates the Second and Fourteenth Amendments"

See Plaintiffs' Complaint ¶ 108-110. Accordingly, none of the conclusory allegations, unwarranted factual deductions and/or legal conclusions masquerading as facts made within these sections are entitled to the assumption of truth.

## II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED AS PLAINTIFFS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED AS PLAINTIFFS FAIL TO ALLEGE ALL ELEMENTS REQUIRED FOR DECLARATORY RELIEF.

Even considering the allegations to be true, Plaintiffs' Complaint fails to clearly and precisely allege elements required for declaratory relief. As a practical matter, the elements required under the federal and state declaratory judgment acts are not materially different. *Compare Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999), *with Floyd v. Guardian Life Ins. Co. of Am.*, 415 So.2d 103, 104 (Fla. Dist. Ct. App. 1982). To be legally sufficient, a complaint for declaratory relief must allege that:

> (1) there is a bona fide dispute between the parties; (2) the plaintiff has a justiciable question as to the existence or nonexistence of some right, status, immunity, power or privilege, or as to some fact upon which existence of such a claim may depend; (3) the plaintiff is in doubt as to the claim; and (4) there is a bona fide, actual, present need for the declaration.

*Ribaya v. Bd. of Trs. of City Pension Fund for Firefighters & Police Officers in the City of Tampa,* 162 So. 3d 348, 352 (Fla. 2d DCA 2015).

Within Count I of Plaintiffs' Complaint for Declaratory and Injunctive Relief, Plaintiff fails to allege any of the four necessary elements to sufficiently plead a cause of action for Declaratory

Relief. Specifically, Plaintiffs argue their interpretation of federal and state law and draw legal conclusions, but fail to fully allege that there is a bona fide dispute between the parties, what the justiciable question as to the existence or nonexistence of some right, status, immunity, power or privilege, or as to some fact upon which existence of such a claim may depend actually is, that Plaintiffs are in doubt as to the claim, and that there is a bona fide, actual, present need for the declaration.

### III.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER 28 U.S.C. § 2201(a)

Notwithstanding the above, if the Court finds Plaintiffs' Complaint sufficiently pleads the elements for declaratory relief pursuant to Federal Declaratory Judgment Act, there are additional factors to be considered that would support dismissal. Federal courts must exercise caution when asked to entertain actions with parallel state-court proceedings. Here, Plaintiffs invoke the Declaratory Judgment Act, which is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995). "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942)). The Court is afforded "unique and substantial discretion" in deciding whether to declare the rights of interested parties. *Wilton v. Seven Falls Co.*, 515 U.S. at 286. Importantly, the Supreme Court has cautioned courts that there are certain cases in which "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where ***another suit is pending in a state court presenting the same issues***, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. In such a case, the

district court should exercise its discretion to dismiss or stay the declaratory action in light of pending state proceedings. *Wilton*, 515 U.S. at 286.

The Eleventh Circuit of the United States has explained that federal district courts should consider the following nine (9) non-exclusive factors in deciding whether to adjudicate, dismiss, or stay a declaratory judgment action under 28 U.S.C. § 2201(a):

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
> (2) whether the judgment in the federal declaratory action would settle the controversy;
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
> (6) whether there is an alternative remedy that is better or more effective;
> (7) whether the underlying factual issues are important to an informed resolution of the case;
> (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th 1278, 1282-83 (11th Cir. 2021) (citing *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005)).

First, the state has an interest in having the issues raised in the federal declaratory action decided in the state courts. Within *Bruen*, one of the cases upon which Plaintiffs heavily rely, the Federal Court establishes that reasonable regulation of the right carry is not a violation of the Second Amendment. Such regulation has historically fallen upon each individual State. As Plaintiffs explain in ¶ 2-3 of Plaintiffs' Complaint, all 50 States and the District of Columbia have separate, though many similar, laws regarding regulation of the right to carry. In accordance with

that right, the right of regulation of the Constitutional right to bear arms is explicitly established in the Florida Constitution. Specifically, Section 8 of the Florida Constitution states:

> SECTION 8.    Right to bear arms.—
> (a)   The right of the people to keep and bear arms in defense of themselves and of the lawful authority of the state shall not be infringed, ***except that the manner of bearing arms may be regulated by law.***

While "history reveals a consensus that States could not ban public carry altogether," *Bruen*, 597 U.S. at 53 (emphasis omitted), "the manner of public carry *was subject to reasonable regulation*." *Id*. at 59. "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right [to keep and bear arms] [i]s not a right to keep and carry a[] weapon . . . in any manner whatsoever." *Id*. at 21. It was instead common in the 19th century, for example, for States to allow open carry while forbidding concealed carry, a method of public carry once thought to signal a person's ill intent. *Id.* at 52–53. Though Plaintiffs argue that under *Bruen*, Section 790.053 is unconstitutional because no early American law specifically banned open carry, *Bruen* does not require "a historical twin." *Id.* at 30. Rather, it instructs courts to examine whether a modern law is consistent with the history of the right to keep and bear arms **and** the Nation's tradition of firearms regulation. See *Id*. at 17. Fla. Stat. § 790.053 satisfies that test because it is analogous to historical bans on concealed carry (as well as various other regulations of the manner of public carry). Like those bans, Florida's law merely regulates the manner of public carry, expressing a preference for carrying "under clothing or in a pocket" rather than in "a visibly exposed belt holster." *Drake v. Filko*, 724 F.3d 426, 440 (3d Cir. 2013) (Hardiman, J., dissenting).

"[A] State may prohibit the open or concealed carry of firearms," just not both. *Id*. at 449. Specifically, Fla. Stat. § 790.053 does not prohibit public, concealed carrying of arms, but places restrictions upon public, open carry with several exceptions as set forth in Fla. Stat. § 790.25(2). Moreover, along the same token, it is not unreasonable for a state to set reasonable restrictions on

persons eligible for a concealed carry license as it falls well within the State's right to *reasonably* regulate the ownership of firearms. As there exists a historical precedent wherein regulation of the right to bear and carry remains with each individual State and Fla. Stat. § 790.053 does not wholly restrict any individuals right to bear or carry, but rather limits how they can carry in public, concealed, and at what age they can carry in public, at 21 years or older, the issues raised in this action should be determined in the state's courts.

Second, the judgment in the federal declaratory action would not settle the controversy. There are several currently pending appeals in Florida courts regarding Fla. Stat. § 790.053. See *McDaniels v. State of Florida*, 1D23-0533 (Fla. 1st DCA) and *Guzman v. State of Florida*, 6D23-2829 (Fla. 6th DCA). Within these cases, Plaintiffs assert almost identical arguments as presented in the instant action, none of which would be determined by the outcome of this case, but would ultimately be remanded. Plaintiffs have only requested that this Court determine that Fla. Stat. § 790.053 is unconstitutional; however, that begs the questions as to what is considered "reasonable" as it pertains to regulations of carrying arms; which cannon should Florida courts review the regulations – per *Heller*, per *Bruen*, per *Norman* – when determining the constitutionality of a state law; what regulations, if any, can the State implement on open carry of arms; and the rights of each State to implement regulations on the bearing and carrying of arms on a state-by-state basis. Clearly, the explicit request to deem Fla. Stat. § 790.053 unconstitutional creates more controversy that will undoubtedly arise. Therefore, a judgment in this action as requested by Plaintiffs would not settle the controversy.

Third, the federal declaratory action would not serve a useful purpose in clarifying the legal relations at issue. The claims made here by Plaintiffs and others currently pending in state courts are inextricably intertwined. Interestingly, the non-party affidavits set forth in Plaintiffs'

Complaint present facts from underlying state court cases wherein the non-parties were arrested for violations of Fla. Stat. § 790.053. Importantly, a non-party affidavit alleges facts regarding their arrest wherein the arresting officer allegedly made statements that were not in keeping with Florida law and arrested the non-party despite the non-party being allegedly in his rights at the time of arrest. Such facts would be better situated in the court that had jurisdiction over the incident in question. Moreover, Plaintiffs attempt to allege that Fla. Stat. § 790.053 violates the Second Amendment rights of adults 18-20 years old as they are not eligible to obtain a concealed carry license until 21 and therefore, open carry is their only opportunity to carry in public at all. However, notably, Plaintiffs are not challenging the constitutionality of Florida's regulation on licensing for concealed carry contained in Fla. Stat. § 790.06.  Clearly, there are state cases that have prior jurisdiction over those particular sets of factual allegations particularly considering those individuals are not a party to this present lawsuit. Additionally, the federal court is not in any position to offer any clarification as to the State laws and State Court opinions as applicable to the factual allegations set forth by Plaintiffs. The state trial court is fully capable and better suited to resolve the issues raised by Plaintiffs here. Plaintiffs' lawsuit is simply wasting scarce federal judicial resources.

Fourth, the declaratory remedy is clearly being used in this case for the purpose of procedural fencing. Other state cases, past and pending, including those cited by Plaintiffs in their Complaint, have denied the request to determine that Fla. Stat. § 790.053 was unconstitutional. Rather, Florida courts have found that, even within the cannon proposed by Plaintiffs under *Heller* and *Bruen*, national and statewide history and tradition support reasonable regulation and refused to deem Fla. Stat. § 790.053 unconstitutional. By seeking the declaratory remedy in Federal Court, Plaintiffs attempt to obtain *res judicata,* avoiding entering the state courts and nullifying the State

courts' position as previously established. Despite the individual Plaintiff and individual non-parties referenced in Plaintiffs' Complaint residing in 19th Judicial Circuit and both Defendants having their principal place of business in St. Lucie County, rather than filing the action in the 19th Judicial Circuit, Plaintiffs attempt to encompass all Florida members of Plaintiffs GOA and GOF without presenting any factual evidence supporting the standing of members outside of the 19th Circuit.

Fifth, for the same reasons explained above, the use of a declaratory action here would increase the friction between the federal and state courts and improperly encroach on Florida's jurisdiction. In effect, Plaintiff wants this federal court to unnecessarily stand in the shoes of the state court and substitute its judgment in lieu of the better-positioned state court. This could only encourage unnecessary friction between the Florida and federal court.

Sixth, a more effective alternative remedy would be to dismiss this action and require Plaintiffs to file the inquiry with the state court in their respective jurisdiction especially considering some of the factual allegations upon which Plaintiffs' Complaint is based are cases previously filed in the 19th Circuit. Additionally, Plaintiffs cite <u>Norman</u>, a case that Plaintiffs specifically state within Plaintiffs' Complaint stemmed from an arrest and prosecution in the 19th Circuit, setting previous precedent in the state courts. Moreover, the existence of other cases that challenge Fla. Stat. § 790.053 in the state courts proves that the state courts not only are better-positioned but fully capable of addressing these issues effectively without wasting federal resources.

Seventh, the underlying factual issues here are clearly important to an informed resolution of the case. "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate" a regulation. <u>United States v. Frandsen</u>, 212 F.3d 1231, 1235 (11th Cir. 2000). Facial challenges

are "the most difficult challenge[s] to mount successfully, since the challenger must establish that no set of circumstances exist under which the [regulation] would be valid." *Fla. Dep't of Revenue v. DIRECTV, Inc.*, 215 So. 3d 46, 50 (Fla. 2017) (quoting *United States v. Salerno*, 481 U.S. 739 (1987)); see also *Edenfield v. State*, 375 So. 3d 930, 932 (Fla. 1st DCA 2023) (rejecting a facial challenge to Florida's felon-in possession ban because it is valid in at least some circumstances); *Antonyuk v. Chiumento*, 89 F.4th 271, 307 (2d Cir. 2023) (concluding that a concealed-carry licensing requirement was "not facially unconstitutional" because it could be applied to "a person who, if armed, would pose a danger to . . . the public"). Many of the factual allegations in support of Plaintiffs' claims for relief, as discussed herein, were previously in state court and not fully explained. Without the full and complete record of facts as set forth in the underlying cases, the Federal Court cannot hope to accurately evaluate those issues.

Eighth, the Florida trial court is in a much better position to evaluate those factual issues than is this federal court. This is a case whose issues have already been presented in state courts. Moreover, the factual allegations upon which Plaintiffs' base their claims for relief either occurred in the State of Florida and/or were tried in the state courts. State courts are much better informed and equipped to address the issues raised by Plaintiffs related to whether or not the restriction on open carry is reasonable or in violation of the Second Amendment of the U.S. Constitution as well as the Florida Constitution. Lastly, ninth, there is clearly a close nexus between the underlying factual and legal issues and state law and/or public policy in light of the foregoing.

**IV. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE FLORIDA'S OPEN CARRY RESTRICTIONS ARE CONSTITUTIONAL UNDER THE LEGAL FRAMEWORK SET FORTH IN *BRUEN*.**

Regardless of Plaintiffs claims that *Norman* is no longer "good" case law, the issues presented in this proceeding are better addressed in *New York State Rifle & Pistol Association v.*

*Bruen*, 142 S. Ct. 2111 (2022). In *Bruen*, the Court held that the Second Amendment protects the right to carry firearms in public for self-defense, "subject to certain reasonable, well-defined restrictions," including limits on "the manner by which one carrie[s] arms." 142 S. Ct. at 2156. The Court, moreover, recognized that as a historical matter, States were able to "lawfully eliminate one kind of public carry . . . so long as they left open the [other] option." *Id*. at 2150. *Bruen* expressly approved of public carry licensing systems like Florida's, which do not "prevent law-abiding, responsible citizens from exercising their Second Amendment right to public carry." 142 S. Ct. at 2138 n.9 (internal quotations omitted). Therefore, based on the Supreme Court's previous ruling, it would follow that Florida's current public carry licensing system and restrictions on open carry are constitutional and do not infringe on Plaintiffs' Second Amendment rights.

   a. **Plaintiffs have not established that the Second Amendment's text protects the right to openly carry firearms in public especially when concealed carry of firearms is permitted.**

First, Plaintiffs bear the burden to show that the Second Amendment's text covers their proposed conduct—openly carrying firearms in public—and thus presumptively protects that conduct. See *Bruen*, 142 S. Ct. at 2129-30 ("When plain text covers an individual's conduct . . . [t]he government must then justify its regulation.") (emphasis added); *id*. at 2141 n.11 ("[B]ecause the Second Amendment's bare text covers petitioners' public carry, the respondents here shoulder the burden of demonstrating that New York's proper-cause requirement is consistent with the Second Amendment's text and historical scope.") (emphasis added). Generally, the burden shifts to the government to justify a challenged regulation only after the plaintiff shows, as an initial matter, that their rights have been infringed. See, e.g., *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) ("Under this Court's precedents, a plaintiff bears certain burdens to demonstrate an infringement of his rights under the Free Exercise and Free Speech Clauses. If the plaintiff

carries these burdens, the focus then shifts to the defendant to show that its actions were nonetheless justified[.]"); *Tennant v. Jefferson Cnty. Comm'n*, 567 U.S. 758, 760 (2012) (plaintiff challenging constitutionality of redistricting plan must first show population differences could be practically avoided, then burden shifts to State to justify plan). The Second Amendment's text does not protect a right to the open carriage when another means of public carriage (concealed carriage) is available. The Amendment's operative clause provides that "the right of the people to keep and bear [a]rms, shall not be infringed," U.S. Const. amend. II, and its "'words and phrases'" should be given their "'normal and ordinary'" meaning, *Heller*, 554 U.S. at 576 (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931)). If the framers had intended to guarantee a right to bear arms openly, "nothing would have been simpler" than to say so. *Sprague*, 282 U.S. at 732. Because the Second Amendment's text does not guarantee a right to carry firearms in public in a particular manner, the Amendment does not "presumptively protect[ ]" the open carriage of firearms, *Bruen*, 142 S. Ct. at 2130, and Plaintiffs' challenge fails on this basis alone.

> **b. Florida prohibition of the open carriage of firearms in public, while permitting concealed carriage, is consistent with historical tradition.**

Notwithstanding the above, the second question is whether defendants have "demonstrate[d] that [Florida's] regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. To show that a challenged regulation aligns with historical tradition, *Bruen* explained, the government may either identify historical regulations that are "distinctly similar" to the challenged regulation or use "analogical reasoning" to demonstrate that the challenged regulation is analogous to historical regulations. *Id*. at 2131-32. Moreover, Bruen recognized that a variety of historical sources and periods may inform these inquiries, including (1) "English practices that prevailed up to the period immediately before and after the framing of the Constitution;" (2) public understanding of the right to keep and bear arms in 1791,

when the Second Amendment was ratified, and in 1868, when the Fourteenth Amendment was ratified; and (3) the interpretation of the right in the years following both Amendments' ratification. Id. at 2136-38 (internal quotations omitted). The Court "acknowledge[d] . . . an ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding" of the right to keep and bear arms from 1791 or 1868.

Regardless, this court need not conduct an independent historical analysis because the Supreme Court has repeatedly recognized—including in *Bruen*—a robust historical tradition of regulating the manner of public carriage by allowing one manner of carriage while prohibiting another. In *Heller*, the Court explained that "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right [to keep and bear arms] was not a right to keep and carry any weapon whatsoever in any manner whatsoever." 554 U.S. at 626 (emphasis added); see *McDonald v. City of Chi.*, 561 U.S. 742, 786 (2010) (same). The Court repeatedly reiterated this point in *Bruen*. See, e.g., 142 S. Ct. at 2128 (declining to find a Second Amendment right to carry weapons "'in any manner whatsoever'") (quoting *Heller*, 554 U.S. at 626); id. at 2138 ("[T]he right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing . . . the manner of carry[.]"); *Id.* at 2150 ("The historical evidence from antebellum America does demonstrate that the manner of public carry was subject to reasonable regulation.") (emphasis in original); I*d.* at 2156 ("[T]hrough the Anglo-American history of public carry," the Second Amendment has been subject to restrictions "limit[ing]" the "manner by which one carried arms[.]"); see also *Id.* at 2157 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); *Id.* at 2162 (Kavanaugh, J., concurring) (noting *Heller* and *McDonald*'s reiteration that right to keep and bear arms does not guarantee right to carry weapon in any

manner). *Bruen* also explained that as a historical matter, States were able to "lawfully eliminate one kind of public carry . . . so long as they left open the [other] option." *Id*. at 2150. Particularly relevant here, *Bruen* also stated that "these antebellum state-court decisions evince a consensus view that States could not altogether prohibit the public carry of 'arms,'" but could prohibit one manner of public carriage so long as another manner of carriage was permitted. *Bruen*, 142 S. Ct. at 2147; see AE Br. 18- 21 (explaining that antebellum cases demonstrated that right to bear arms was subject to limits on manner of carriage).

Like its historical counterparts, Florida has "lawfully eliminate[d] one kind of public carry" while leaving "open [another] option," and has thus has not "altogether prohibit[ed] the public carry of arms" for self-defense. *Bruen,* 142 S. Ct. at 2147, 2150 (internal quotations omitted). To be sure, Florida has made the converse choice by allowing concealed carriage while prohibiting open carriage. But, as *Bruen* explained, the historical regulations need not be identical, but rather only "distinctly similar" to the challenged regulation. *Id*. at 2131. Historical practice through the end of the 19th-century "confirm[s]" this tradition of regulating the manner of public carriage. *Bruen*, 142 S. Ct. at 2137 (internal quotations omitted). States and their localities continued to enact statutes prohibiting the concealed carriage of weapons, and to enforce them. Courts, moreover, "almost universally held that the legislature may regulate and limit the mode of carrying arms" without violating the right to keep and bear arms. *Commonwealth v. Murphy*, 166 Mass. 171, 172-73 (1896). Florida's public carry licensing regime and restrictions on open carry satisfy this standard.

**V.    IN THE ALTERNATIVE, THIS PROCEEDING SHOULD BE STAYED PENDING THE RULING ON *NRA v FDLE* (Case No. 12314).**

Alternatively, if, despite the above arguments, this Court finds that Plaintiffs are entitled to have their Complaint heard and rights determined, Defendants assert that this Court should take

judicial notice of current pending litigation in federal courts wherein the same issues are being addressed. Specifically, there remains an ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of the right to keep and bear arms from 1791 or 1868. As such, there exists a significant issue that has not yet been addressed by the federal courts. Notably, a federal court case, *NRA v. FDLE* (Case No. 12314) in the Eleventh Circuit, currently pending centers largely around this issue of which time period is most relevant for challenges to state laws 1791 from the Second Amendment or 1868 from the Fourteenth Amendment. Without this determination, there is no precedence upon which to base the historical analysis of public carry licensing regime and restrictions on open carry. Moreover, if this Court were to delve into the pending proceeding and make its own decision, such decision might be rendered moot by the decision of the Eleventh Circuit in *NRA v. FDLE*. Therefore, alternatively, this Court should stay the present proceeding pending the decision of the Eleventh Circuit case, *NRA v. FDLE* (Case No. 12314).

WHEREFORE, Defendant STATE ATTORNEY THOMAS R. BAKKEDAHL in the Nineteenth Judicial Circuit of Florida, and the STATE ATTORNEY'S OFFICE for the 19th Judicial Circuit of Florida respectfully move to dismiss, or alternatively, stay Plaintiffs' Complaint for Declaratory and Injunctive Relief for failure to state a claim upon which relief can be granted, under 28 U.S.C. § 2201(a), and pursuant to the legal framework in *Bruen*, and grant any other relief the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of September, 2024, a copy of the foregoing has been electronically filed with the Florida E-File Portal for e-service on all parties of record herein.

**JACOBS SCHOLZ & WYLER, LLC**

*/s/ Arthur I. Jacobs*

_____

Arthur I. Jacobs, Esq.
Fla. Bar No.: 108249
Richard J. Scholz, Esq.
Fla. Bar No.: 0021261
Douglas A. Wyler, Esq.
Fla. Bar No.: 119979
961687 Gateway Blvd., Suite 201-I
Fernandina Beach, Florida 32034
(904) 261-3693
(904) 261-7879 Fax
Primary: filings@jswflorida.com