IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Civil Action No. 2:24-cv-14250-JEM

GUN OWNERS OF AMERICA, INC.,
GUN OWNERS FOUNDATION, and
RICHARD HUGHES,

    Plaintiffs,

v.

SHERIFF KEITH PEARSON, in his official
capacity as Sheriff of St. Lucie County, the
ST. LUCIE COUNTY SHERIFF'S OFFICE,
THOMAS BAKKEDAHL, in his official capacity
as the State Attorney for the 19th Judicial Circuit of
Florida, and the STATE ATTORNEY'S OFFICE
for the 19th Judicial Circuit of Florida,

    Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## SHERIFF PEARSON'S MOTION TO DISMISS OR STAY

### STATEMENT

This case involves a challenge to Florida's idiosyncratic ban on the ability of its residents and visiting gun owners to publicly carry firearms openly about their person. In stark contrast to the Second Amendment, which declares that Americans have the unequivocal and unfettered right to "bear arms," Fla. Stat. § 790.053(1) declares that it is "unlawful for any person to openly carry on or about his or her person any firearm...." Florida's ban on open carry violates the Second Amendment, as there is no historical tradition of governments banning the carrying of arms openly. Indeed, Florida's ahistorical infringement certainly would have come as news to the colonists who unabashedly carried their five-foot-long muskets at Lexington and Concord to resist oppression by the British Crown.

1

Plaintiffs initially filed their Complaint for Declaratory and Injunctive Relief on August 6, 2024, alleging a single cause of action under 42 U.S.C. §1983 for violations of their Second and Fourteenth Amendment rights. ECF #1. After both pairs of Defendants failed to timely respond to Plaintiffs' Complaint, this Court issued an Order on September 9, 2024 directing the Clerk to enter a default, which was entered the same day. ECF #13, #14. The Court then ordered that, "**[o]n or before September 23, 2024**, Defendants shall file" their "answer or other response to the Complaint" and "a motion to set aside the Clerk's Default that shows good cause for Defendants' failure to timely respond to the Complaint." ECF #18 (emphasis in original). Thereafter, Defendants filed motions to "vacate" and "set aside" the default on September 10 and 13, 2024 (ECF #20, #23), followed by motions to dismiss or for a stay on September 17 and 23, 2024. ECF #24, #25.

In his "Motion to Dismiss or, in the Alernative [sic] Motion to Stay," ECF #25 ("MTD"), Defendant St. Lucie County Sheriff Keith Pearson ("Pearson") seeks dismissal of Plaintiffs' Complaint under Federal Rules of Civil Procedure Rules 12(b)(6) and (b)(7). First, Pearson claims that Plaintiffs fail to allege certain elements required of declaratory relief "under" the Declaratory Judgment Act. Then, Pearson disputes Plaintiffs' satisfaction of the Article III "actual controversy" requirement by purporting to require individual residency or arrest history within St. Lucie County before Plaintiffs can challenge the constitutionality of a criminal statute. Accordingly, Pearson characterizes enforcement as "hypothetical" – and any merits ruling to be "advisory" – while simultaneously declining to disavow his credible threat to enforce the statute. Next, Pearson conjures a "litany of practical and logistical challenges," should this Court entertain Plaintiffs' challenge, to include all manner of constitutional and policy questions to *other* statutes not at issue here. Finally, Pearson seeks dismissal for an ostensible failure to join

required, or necessary, or indispensable parties – namely the State of Florida, which is already represented by Defendant Bakkedahl, and certain local entities Pearson claims should be added to this case.

## ARGUMENT

### I. STANDARD OF REVIEW

"To survive a Rule 12(b)(6) motion, a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, 2023 U.S. App. LEXIS 29727, at *7 (11th Cir. Nov. 8, 2023). In this Circuit, "[a] claim is facially plausible if it 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citation omitted). However, "[l]abels, conclusions, and formulaic recitations of the elements 'will not do.'" *Datum Software, Inc. v. Citizant, Inc.*, 2024 U.S. App. LEXIS 19947, at *6 (11th Cir. Aug. 8, 2024) (citation omitted).

### II. PEARSON IS CONFUSED ABOUT THE SUBJECT MATTER OF THIS CASE.

In addition to "join[ing] in and adopt[ing]" the motion "to stay the case" filed by Defendants Bakkedahl and the State Attorney's Office (ECF #24), Sheriff Pearson offers his additional thoughts as to why this case should be stayed pending the Eleventh Circuit's resolution of *NRA v. Bondi*, 72 F.4th 1346 (11th Cir. 2023) (granting rehearing en banc, vacating panel opinion). MTD at 2 & n.1. But it appears that Pearson misunderstands the subject matter of this case. For starters, Pearson notes that *NRA* will decide "whether the Florida statute prohibiting persons under the age of 21 from buying firearms violates the Second Amendment," and asserts this "will directly impact [GOA member] Jack McDuffie...." *Id.* But what Pearson overlooks is that, while Fla. Stat. § 790.065(13) provides that "[a] person younger than 21 years of age may not *purchase* a firearm," the restriction applies only to a purchase, and does not speak to possession,

3

leaving open alternate methods of acquisition such as a gift, or borrowing a parent's firearm. Thus, *NRA*'s resolution of the under-21 *purchase* question will not control McDuffie's desire to openly *carry* a firearm here.

Pearson next posits that "McDuffie cannot public carry because of Florida's separate prohibition on allowing any persons under the age of 21 from obtaining a Concealed Carry License." *Id.* But just how McDuffie's access to a Florida *Concealed* Weapon License (a license which is not at issue in *NRA*, and which Florida no longer requires for concealed carry) resolves McDuffie's right to *openly* carry a firearm, Pearson does not say.

Finally, Pearson's request for a stay is a *non sequitur* because his arguments apply only to members of Plaintiff GOA *who are under 21* – not the thousands of GOA's Florida members above that age, including the named Plaintiff, Richard Hughes. Why *all* of Plaintiffs' members and supporters should wait for resolution of their facial challenge, until the Eleventh Circuit resolves an entirely different issue that has no bearing on Plaintiffs' 18-to-20 year old as-applied challenge, Pearson does not explain.

## III. THIS CASE CLEARLY PRESENTS A "CASE OR CONTROVERSY."

### A. A Controversy Exists Between the Parties.

Before proceeding to his own arguments, Pearson again pauses to adopt the arguments made by the other Defendants, claiming that "Plaintiffs fail to plead the requisite elements for seeking declaratory relief under either state or federal law." MTD at 3. But being that Plaintiffs raise a *federal* claim in *federal* court, it is entirely unclear why they must seek "declaratory relief under … state … law." Pearson then quotes a four-part test for relief under the *Florida* Declaratory Judgment Act, but this language appears nowhere in the case he cites, *Malowney v. Fed. Collection*

4

*Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999). Rather, *Malowney* involves the familiar *federal* standard for relief.

Finally acknowledging the appropriate Article III standard that actually applies in *this* Court, Pearson asserts that Plaintiffs have established no case or controversy because "there are no facts alleged" that Plaintiffs "either reside in St. Lucie County Florida, or have ever been arrested by the St. Lucie County Sheriff's Office...." MTD at 4; *see also* at 5 (claiming that "any examples of enforcement" Plaintiffs provided "were a result of actions taken by law enforcement agencies in *other* jurisdictions...."). But even though finally applying the correct standard, what Pearson fails to acknowledge is that he is not the only defendant in this case, which includes a Florida state's attorney who is treated as an arm of the State. *See Scheider v. Leeper*, 2016 U.S. Dist. LEXIS 30839, at \*7 (M.D. Fla. Mar. 10, 2016) (collecting cases) (a "§ 1983 claim against the State Attorney is treated as a claim against the State of Florida."). There can be no "other jurisdictions" defense in a suit against the State.

Moreover, whether any of Plaintiffs' members have suffered actual arrest by Defendants is neither here nor there, since "a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute' ... when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative," even if a "criminal penalty provision has not yet been applied...." *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 301 (1979); *see also* at 302-03 (explaining that standing lies when statute "authorizes imposition of criminal sanctions against" those who violate the law); *see also League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) ("Damocles's sword does not have to actually fall ... before the court will issue an injunction."); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("where threatened action by *government* is concerned, we do not require a plaintiff to

5

expose himself to liability before bringing suit to challenge the basis for the threat"); *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1245 (11th Cir. 1998) ("a plaintiff in a pre-enforcement challenge [must] demonstrate 'a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement,'" including being "threatened with application of the statute," "application is likely," or "there is a credible threat of application"); *Antonyuk v. Chiumento*, 89 F.4th 271, 352 (2d Cir. 2023) (GVRed on other grounds, *Antonyuk v. James*, 144 S. Ct. 2709 (2024)) ("The [Supreme] Court has ... recognized that plaintiffs who intend to comply with the law solely to avoid prosecution ... have standing to bring a pre-enforcement challenge" (citing *Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010), and *Steffel v. Thompson*, 415 U.S. 452 (1974))).

Here, Plaintiffs have explained that they face a credible threat of enforcement vis-à-vis Sheriff Pearson, who posted on Facebook that "[t]he law is not open carry; open carry is still illegal in Florida under most circumstances." Compl. ¶20 ("In other words, Sheriff Pearson's office is particularly focused on the crime of open carry...."). *See Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 263-64 (N.D.N.Y. Nov. 7, 2022) (finding a credible threat of enforcement to exist based on one Sheriff's Facebook post that, "as long as I'm the Sheriff in this county ... we're going to be very conservative in enforcement of this law," and separately finding a credible threat as to another Sheriff's Facebook posts that, "[u]nder the new law, taking a legally licensed firearm into any sensitive area ... is a felony" and "[i]f you own a firearm please be aware of these new laws as they will effect [sic] all gun owners whether we agree with them or not."). Pearson's motion (i) does not acknowledge or otherwise address this Facebook post, (ii) does not explain why it does not constitute a credible threat of enforcement, (iii) does not attempt to walk back his peculiar focus on gun owners who deign to exercise their enumerated right to "bear arms" openly in public,

6

and (iv) certainly has not agreed with Plaintiffs that Florida's open carry ban violates the Second Amendment. *See Babbitt*, 442 U.S. at 302 ("the State has not disavowed any intention of invoking the criminal penalty provision," and so "Appellees are thus not without some reason in fearing prosecution for violation of the ban...."); *Antonyuk*, 89 F.4th at 353 (citations omitted) ("the bar for stating a credible threat of enforcement is 'low' and 'quite forgiving,'" and "[i]t is not necessary that a plaintiff be specifically threatened with prosecution. Moreover, far from 'disavow[ing] any intention of invoking' the challenged law ... [the defendant] has expressly stated that he and his officers will enforce the [law], albeit not proactively. ... A lack of enthusiasm or initiative does not rebut the presumption 'that the government will enforce the law as long as the relevant statute is recent and not moribund.'").

Nor, as Pearson claims, is there any need for Plaintiffs to "reside in St. Lucie County Florida." MTD at 4. For starters, Pearson readily concedes that Plaintiff Hughes routinely visits (and intends to continue visiting) all manner of places within Port St. Lucie (*id.* at 5), and Hughes explains that he desires to do so while openly carrying a firearm (Compl. at ¶13). *See also* MTD at 7 (recognizing that "Hughes alleges that there are certain activities in the county he would like to participate in while open carrying"). This, coupled with Pearson's threat of enforcement for those who bear arms openly, makes suit against him entirely appropriate. *See also* 28 U.S.C. § 1391(b) ("A civil action may be brought in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred....").

Changing course, Pearson next surmises that enforcement by his office of Florida's open carry ban against Hughes is not guaranteed. First, because many of Hughes' intended destinations purportedly are "located on private property" which Pearson claims would "not be subject to any public carry statute...." MTD at 5; *see also* at 6 n.4 ("the owners would have the right to forbade

7

[sic] ... open carrying...."").[1] But that is plainly not so, as Fla. Stat. § 790.053(1) broadly prohibits a person from "openly carry[ing] on or about his or her person any firearm," and none of the exceptions provided in Fla. Stat. § 790.25 apply to open carry on another's private property, regardless of what rules the property owner sets. *See* Fla. Stat. § 790.25(n) (exempting only "[a] person possessing arms at *his or her* home or place of business"). And contrary to his claim, Pearson *has* made at least one arrest of a person open carrying on private property – a federal corrections contractor who failed to disarm after work and was spotted by "sheriff's investigators."[2] Notably, it was Defendant Bakkedahl's office that prosecuted the case. *See* Exhibit A, Docket Sheet for Case No. 2018MM002629 A - *STATE OF FLORIDA vs. THOMPSON, LEROY AUGUSTUS JUNIOR.*

Second, Pearson predicts that any public place Hughes intends to visit *more likely* would be patrolled by another law enforcement agency. MTD at 6; *see also* at n.5 (emphasis added) (theorizing that "Oxbow Park is … an area policed by the Port St. Lucie Police Department" or the "Florida Fish and Wildlife Conservation Commission," and "[a]ny potential enforcement … is *likely* to be undertaken by these agencies, who Plaintiff Hughes is *much more likely* to encounter...."); at n.6 (emphasis added) (surmising that, at "a Florida Turnpike Service Plaza, … enforcement is *likely* to be carried out … by the Florida Highway Patrol...."). Another federal court recently rejected a nearly identical argument. *Antonyuk*, 639 F. Supp. 3d at 272 ("the Court

---

[1] Pearson attaches as an exhibit a "FAQ" from the gun show Hughes attends, which states that "all guns must be unloaded" while attending the show. MTD at 6 n.4; ECF #25-1 at 3. But this is hardly news – Hughes acknowledged the same in his declaration. *See* Compl. Ex. B ¶19. Of course, whether a firearm is loaded or unloaded has nothing to do with whether it is carried openly or concealed.

[2] *See, e.g.*, W. Greenlee, *Port St. Lucie Man Jailed After Deputies Say He Wore Bulletproof Vest, Openly Carried a Glock into Verizon Store*, TC Palm (Oct. 23, 2018), https://www.tcpalm.com/story/news/crime/st-lucie-county/2018/10/23/florida-man-bulletproof-vest-open-carry-gun-verizon-store/1741959002/.

8

has little doubt that, if there were a gun incident reported at the zoo, the [defendant police chief's] Police Department would promptly respond (in addition to any County Park Ranger available)").[3]

Next, Pearson asserts that Hughes' planned activities in St. Lucie County are "too remote and attenuated," based on "concerns of a future injury ... based on speculative hypotheticals...." MTD at 7. On the contrary, Hughes alleged with specificity and precision (i) that he "visit[s] the Oxbow Eco-Center in Port St. Lucie with [his] dogs at least once a month," (ii) that he "regularly attend[s] the Great American Port St. Lucie Gun Show," with then-plans to attend in September of 2024, and (iii) that he routinely stops for gas "on the Florida Turnpike at the Port St. Lucie Fort Pierce Service Plaza" while traveling to and from these regular activities. Compl. Ex. B ¶¶16, 19, 20. These are hardly "speculative" or "someday" intentions. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (explaining that "'some day' intentions -- without any description of concrete plans, or indeed even any specification of *when* the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require."); *Cf. Antonyuk*, 89 F.4th at 352 (intentions to "'visit the zoo this fall as well, at least once, within the next 90 days' ... in line with the kinds of allegations that the Supreme Court has found sufficient to support pre-enforcement standing ... [plaintiff's] averments, while short of pleading the time and date of his intended visit to the zoo, are more specific than the allegations found sufficient in" numerous cases where the Supreme

---

[3] But even if Pearson's office is not the most likely entity to arrest violators in a particular place within his jurisdiction, "[i]n a suit brought to have a declaration of the unconstitutionality of a state statute or to enjoin the enforcement of the statute," all that is required is that the "defendant ... has *some connection* with the enforcement of the act." *Diaz v. Cobb*, 2007 U.S. Dist. LEXIS 110640, at *3 (S.D. Fla. May 4, 2007). As the St. Lucie County Sheriff, Pearson certainly has at least "*some connection*" with the enforcement of the challenged statute. Indeed, the Detention Operations Division of Pearson's office "[p]erforms intake, booking, and release functions" of newly arrested inmates. Just because the processing and jailing of those who violate the law occurs on the backend does not mean it does not constitute "enforcement" of the statute. And in any case, the St. Lucie County Sheriff's Office *has* enforced the open carry ban in the past. *See* Greenlee, *supra* n.2; *see also* Exhibit A.

Court found a credible threat of enforcement).

### B. Pearson's 'Parade of Horribles' Has Absolutely No Relation to This Case.

Pearson next conjures up a series of "practical challenges" that he claims will result if this Court entertains Plaintiffs' Second Amendment challenge. MTD at 8-10. Noting that Fla. Stat. § 790.053(1) broadly "applies to all licensed gun owners, at all times, in all public places," Pearson asserts that any ruling from the Court would "present a litany of practical and logistical challenges, and "no doubt have a ripple effect throughout the entire state." *Id.* at 8. First keying in on Plaintiffs' allegation that they are ordinary, law-abiding persons seeking to "peaceably" carry their firearms openly in public, Pearson imagines that this "begs the question, how do you define peaceably in this context?" *Id.* Pearson claims that, in order to declare Florida's open carry ban an infringement of the right to "bear arms," this Court would be forced to consider:[4] (i) whether gun toters must use holsters, (ii) whether certain types of firearms might "terrorize others," (iii) the "different sensibilities" of Floridians, (iv) the "prevalence of mass shootings in very public areas," (v) and whether so-called "high capacity extended or drum magazines can be purchased" and carried openly. MTD at 9. In addition to that, Pearson surmises that the Court will also have to be required to (vi) define the full scope of "sensitive location[s] … where open carry should remain prohibited," (vii) "how far away from those locations" open carry may be banned, (viii) how broadly this would apply across the spectrum of Florida citizens," and (ix) other unstated "hypothetical scenarios" including (x) whether someone "ever subjected to a risk protection order … may also openly carry." MTD at 9-10.

---

[4] The Court would not need to entertain any of these questions, as it is not the role of the Court to rewrite Florida's statutory scheme. If Plaintiffs are correct that Florida's ban is unconstitutional, "[i]t is for [Florida's legislature], not this Court, to amend the statute...." *Dodd v. United States*, 545 U.S. 353, 359 (2005).

Pearson sounds as if he is leading a focus group conducting market research, rather than making a legal argument. His cornucopia of irrelevant and inapposite policy issues, while perhaps providing a good table of contents for a Second Amendment hornbook, have literally nothing to do with the question presented here – whether Florida's flat ban on "bear[ing] arms" openly violates the Second Amendment. That simple constitutional question is easily resolved. As Chief Justice Marshall once said, "we must never forget, that it is a constitution we are expounding." *McCulloch v. Maryland*, 17 U.S. 316, 407 (1819).

Pearson's questions also fail to account for the fact that Florida already permits the concealed carry of firearms without a permit (known as "constitutional carry"). The fact that Plaintiffs here *also* seek to exercise their constitutional right to "open carry" has no independent effect on, for example: (i) what "peaceable" means, (ii) whether the public carry of guns (or criminals who, by definition, do not obey laws) leads to mass shootings, (iii) what magazine capacity is best, (iv) whether there are some "sensitive places" that can be declared entirely off limits to firearms, or (v) whether someone subject to a "risk protection order" may open carry (even though already prohibited from concealed carrying or even possessing firearms in the first place). Not only are Pearson's questions entirely unmoored to the question Plaintiffs have actually presented, but also none of them have any special relation to open carry (when concealed carry already is permitted).

One final point bears emphasis. Pearson fearmongers about "mass shootings" and the "second assassination attempt" against former President Trump, as if Floridians simply exercising their enumerated right to open carry (in addition to concealed carry) firearms will lead to blood in the streets. But what Pearson fails to mention is that the would-be assassin to whom he refers not only was *already* a convicted felon, ineligible to own firearms, ammunition, and body armor, but

11

also carried a firearm with an obliterated serial number, all *in spite of* existing federal and state bans.[5] 18 U.S.C. §§ 922(g)(1), 922(k), 931(a); Fla. Stat. §§790.23, 790.27. In other words, deranged criminals do not obey the law. It is also worth noting that, for all of Pearson's hand-wringing, President Trump himself appears unconcerned about the exercise of Second Amendment rights by law-abiding Americans. Appearing by video at Plaintiff GOA's "GOALS" convention just over a month after being shot by another would-be assassin in Butler, Pennsylvania, President Trump lauded GOA's "work defending our constitutional rights," and criticized restrictions on the bearing of arms.[6]

Finally, another district court judge recently weighed in on a defendant's similar fearmongering, ordering a show cause hearing after the Illinois Attorney General criticized the court's ruling (enjoining Illinois's ban on the carry of firearms in mass transit), claiming that "the potential safety implications of the Court's order are highlighted by a recent mass shooting on the CTAs Blue Line, in which four people were murdered with firearms three days after the Court's order was entered." *Schoenthal, et al. v. Raoul, et al.*, 22-cv-50326, ECF #122 (N.D. IL. Sep. 25, 2024). This Court likewise should reject Pearson's attempts to link the exercise of constitutional rights to criminal violence.[7]

---

[5] *See* https://www.justice.gov/opa/pr/ryan-wesley-routh-indicted-attempted-assassination-former-president-trump#.

[6] https://www.youtube.com/watch?v=SfDDnDNVCsw.

[7] Even if such a link could be established, the Supreme Court has made clear that "[t]he right to keep and bear arms … is not the only constitutional right that has controversial public safety implications." *McDonald v. Chicago*, 561 U.S. 742, 783 (2010); *see also District of Columbia v. Heller*, 554 U.S. 570, 635 (2008) ("**Error! Main Document Only.**The *Second Amendment* … is the very *product* of an interest balancing by the people"); *Bruen*, 597 U.S. at 26 ("It is this balance—struck by the traditions of the American people—that demands our unqualified deference.").

12

## IV. PEARSON'S CLAIM OF INDISPENSABLE PARTIES IS BASELESS.

Claiming that Plaintiffs failed to join nearly a dozen "required or indispensable" or "necessary" parties, Pearson asserts that Plaintiff's Complaint "should be dismissed without prejudice, until such a time as these indispensable parties are joined to this action." MTD at 11, 13. But for starters, Pearson fails even to articulate the difference between "necessary" and "indispensable" parties. Whereas "[n]ecessary parties are those who must be included in an action … unless there is a valid excuse for their non-joinder," "[i]ndispensable parties are those who must be included in an action before it may properly go forward. No excuse will be accepted for their non-joinder." J. Fleming, "Necessary and Indispensable Parties," 18 U. MIAMI L. REV. 68, *68 (1963). In other words, if a party is found to be "necessary," then a court must determine if that party is "indispensable" pursuant to Fed. R. Civ. P. 19.

Pearson's motion hopelessly conflates these distinct standards, first providing only half of the "two-step" test for "necessary" parties (MTD at 10-11),[8] then claiming that nearly a dozen nonparties are "indispensable here" (*id.* at 11-12), only later to assert that a court must "determine if [without] the indispensable and absent party … the action should proceed" (*id.* at 12). Pearson concludes his argument by arguing that certain parties are "necessary," and therefore that these "indispensable parties" should be "joined to this action." *Id.* at 13.[9]

Aside from Pearson's failure to articulate the proper standard, Pearson fails to understand the nature of the defendants currently in the case. Claiming that "complete relief cannot be

---

[8] Pearson's motion repeatedly provides quotations that do not appear in the cases he cites. MTD at 10 (two times); at 3 (once).

[9] Even if Pearson's claims had any colorable basis in the law, the remedy for failure to add a "necessary" party whose joinder is "presumably feasible" is not "dismiss[al] without prejudice (MTD at 13), but "[r]ather … [to] request that the Court order [joinder] as a necessary party under Rule 19(a)(2)." *Davis v. Raymond*, 2013 U.S. Dist. LEXIS 68392, at *10-11 (S.D. Fla. May 13, 2013) (citation omitted).

13

afforded in … the state's absence," Pearson claims that Plaintiffs should have sued the "State of Florida/Attorney General," the "Florida Highway Patrol," the "Florida Department of Law Enforcement," and the "Florida Fish and Wildlife Conservation Commission." MTD at 2-3, 11. According to Pearson, "*Florida* is violating their rights," not him[10] and, even with relief against Pearson, "Plaintiffs and members of the GOA and GOF would still be subjected to the same statute in [other] jurisdictions...." *Id.* at 11. Pearson opines that "the State of Florida[] would no doubt have an interest in the disposition of this proceeding," and is "entitled to have [its] position heard as it relates to these issues...." *Id.* at 12.

But it is axiomatic – black letter law – that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted); *see also Wooding v. State Att'y's Off.*, 2010 U.S. Dist. LEXIS 130823, at *4 (S.D. Fla. Nov. 30, 2010) ("Clearly, the State Attorney's Office is an arm of the state of Florida...."); *accord Scheider v. Leeper*, 2016 U.S. Dist. LEXIS 30839, at *7 (M.D. Fla. Mar. 10, 2016) ("In Florida, the State Attorney and the State Attorney's Office are considered an 'arm of the state,'" and a "*§ 1983 claim against the State Attorney is treated as a claim against the State of Florida*") (emphasis added, collecting cases). And not only is the State of Florida already a

---

[10] Although Defendant's finger-pointing at state law as the source of Plaintiffs' grievances might be understandable from a layman's perspective, it has no basis in the law. Rather, Sheriff Pearson is the chief law enforcement officer within St. Lucie County. Not only that, but as noted above, he has specifically noticed his intention to enforce Florida's open carry ban – *i.e.*, the very statute whose constitutionality is challenged here. *See* Compl. at ¶20; *see also Vigue v. Shoar*, 494 F. Supp. 3d 1204, 1222 (M.D. Fla. 2020) (Sheriff "as the final authority in [the sheriff's office], has the authority to decide whether to enforce a Florida statute as a matter of interpretation and enforcement discretion."). Not to mention he has enforced the statute under review. *See* Greenlee, *supra* n.2. If Pearson seeks to wash his hands of the Florida statute Plaintiffs challenge, he is going about it the wrong way.

participant in this lawsuit through Plaintiffs' naming of Defendant Bakkedahl and his office, but also Pearson fails to note that, to the extent that Florida "ha[s] an interest" and is "entitled to have [its] position heard" in this case, Plaintiffs provided a Notice of Constitutional Question to the Florida Attorney General, apprising her of this litigation pursuant to Fed. R. Civ. P. 5.1 and 28 U.S.C. § 2403 (even though such notice was not required because, again, a suit against Defendants Bakkedahl and the State Attorney's Office constitutes a suit against the State). ECF #6. The Florida Attorney General chose not to intervene, and certainly has not raised any objection to this federal case being heard in federal court. To the contrary, as counsel of record for Defendant Bakkedahl recently reported to the press, the Attorney General's "office turned down a request to represent the prosecutor" and "also declined a request by the St. Lucie County sheriff to get involved in the case."[11]

Pearson's plea to clutter this case with numerous other sheriffs' offices and police departments is similarly baseless. Arguing that Plaintiffs should be forced to bring suit against (i) the "Volusia County Sheriff's Office," (ii) the "Hillsborough County Sheriff's Office," (iii) the "Palm Beach County Sherriff's Office," (iv) the "Daytona Beach Police Department," (v) the "Miami Police Department," and (vi) the "Port St. Lucie PD" – as a condition precedent to suing him – Pearson claims that some of Plaintiffs' factual allegations "were a result of actions taken by law enforcement agencies in *other* jurisdictions and counties." MTD at 2-3, 5. Thus, Pearson concludes, "there is no question that complete relief cannot be afforded in … the absence of the other counties and agencies...." MTD at 11. Although conceding that "Plaintiffs' Complaint … only seeks that … a ruling apply to *these* Defendants," Pearson claims that, "without these [*other*]

---

[11] *See* G. Fineout, Florida Attorney General Skips Defending Law Banning Open Carry, Politico (Sept. 23, 2024), https://www.politico.com/news/2024/09/23/florida-open-carry-ashley-moody-00180553.

15

parties' inclusion … complete relief of the kind that this Complaint seeks [is] virtually impossible." *Id.* But Pearson offers nothing to bridge the logical gap in his argument, failing to explain how relief *against Defendants* will not offer complete relief *against Defendants*. Even if the State were not represented in this case (it clearly is), Pearson offers no legal authority for the notion that Plaintiffs must sue *every* jurisdiction where they might be harmed before they can challenge *Pearson's* infringement of their constitutional rights. As a Pennsylvania district court recently explained, such "pointing fingers" amongst defendants (or, in this case, pointing fingers at nonparties) is utterly "irrelevant," because "the Court is not charged with determining 'the most suitable defendants,' but rather … 'whether the complaint has named defendants who meet the prerequisites to adjudication in a federal court.'" *OpenPittsburgh.Org v. Voye*, 563 F. Supp. 3d 399, 413 (W.D. Pa. 2021) (citing *Finberg v. Sullivan*, 634 F.2d 50, 53 (3d Cir. 1980), which, in turn, relied on *Ex Parte Young*, 209 U.S. 123, 157 (1908)). Because Plaintiffs' Second Amendment challenge is properly brought vis-à-vis *Pearson*, this Court need not inquire as to whether Plaintiffs *could* have sued *other* defendants in *other* jurisdictions.

## CONCLUSION

For the reasons stated, Defendant's motion to dismiss or stay (ECF #25) should be denied.

Respectfully submitted, this 30th day of September 2024,

**KATZ & PHILLIPS, P.A.**
Attorneys for the Plaintiffs
509 W. Colonial Drive
Orlando, Florida 32804
Tel./Fax: 321.332.6864
Pleadings: pleadings@kplegalteam.com
Email: jphillips@thefirearmfirm.com

JAMES D. PHILLIPS, JR., ESQUIRE
Florida Bar No.:22846

Stephen D. Stamboulieh *
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440 (T)
stephen@sdslaw.us
Mississippi Bar No. 102784
*Admitted Pro Hac Vice

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

    I certify that on September 30, 2024, a copy of the foregoing document or pleading has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to: Arthur Ivan Jacobs, Esquire, Counsel for Defendants Bakkedahl and SAO, 961687 Gateway Boulevard, Suite 201-I, Fernandina Beach, FL 32034; buddy@jswflorida.com; Summer M. Barranco, Esquire, and Richard A. Giuffreda, Esquire, Counsel for Defendants Sheriff Pearson and St. Lucie County Sheriff's Office, 2455 E. Sunrise Blvd, Suite 1216, Fort Lauderdale, FL 33304; summer@purdylaw.com and richard@purdylaw.com.

_____
**JAMES D. PHILLIPS, JR., ESQUIRE**
Florida Bar No.: 22846