**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
Case No.: 2:24-cv-14250-JEM

GUN OWNERS OF AMERICA, INC.,
GUN OWNERS FOUNDATION, and
RICHARD HUGHES,

      Plaintiffs,

v.

SHERIFF KEITH PEARSON, in his official
capacity as Sheriff of St. Lucie County, the
ST. LUCIE COUNTY SHERIFF'S OFFICE,
THOMAS BAKKEDAHL, in his official capacity
as the State Attorney for the 19th Judicial Circuit of
Florida, and the STATE ATTORNEY'S OFFICE
for the 19th Judicial Circuit of Florida,

      Defendants.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS BAKKEDAHL AND STATE ATTORNEY OFFICE'S MOTION TO DISMISS OR STAY

### STATEMENT

This case involves a challenge to Florida's idiosyncratic ban on the ability of its residents and visiting gun owners to publicly carry firearms openly about their person. In stark contrast to the Second Amendment, which declares that Americans have the unequivocal and unfettered right to "bear arms," Fla. Stat. § 790.053(1) declares that it is "unlawful for any person to openly carry on or about his or her person any firearm...." Florida's ban on open carry violates the Second Amendment, as there is no historical tradition of governments banning the carrying of arms openly. Indeed, Florida's ahistorical infringement certainly would have come as news to the colonists who unabashedly carried their five-foot-long muskets at Lexington and Concord to resist oppression by the British Crown.

Plaintiffs initially filed their Complaint for Declaratory and Injunctive Relief on August 6, 2024, alleging a single cause of action under 42 U.S.C. §1983 for violations of their Second and Fourteenth Amendment rights. ECF # 1. After both pairs of Defendants failed to timely respond to Plaintiffs' Complaint, this Court issued an Order on September 9, 2024, directing the Clerk to enter a default, which was entered the same day. *See* ECF #13, #14. The Court then ordered that, "**[o]n or before September 23, 2024**, Defendants shall file" their "answer or other response to the Complaint" and "a motion to set aside the Clerk's Default that shows good cause for Defendants' failure to timely respond to the Complaint." ECF #18 (emphasis in original). Thereafter, Defendants filed motions to "vacate" and "set aside" the default on September 10 and 13, 2024 (ECF #20, #23), followed by motions to dismiss or for a stay on September 17 and 23, 2024. ECF #24, #25.

In their Motion to Dismiss or, in the Alternative, Motion to Stay and Incorporated Memorandum of Law, ("MTD") (ECF #24), Defendants State Attorney Thomas Bakkedahl and the State Attorney's Office for the 19th Judicial Circuit of Florida seek dismissal of Plaintiffs' Complaint under Fed. R. Civ. P. Rule 12(b)(6). First, Defendants levy objections against various of Plaintiffs' allegations, broadly characterizing them as "conclusory" and "unwarranted" without offering any specificity. Second, Defendants cite an irrelevant *state* law standard to claim Plaintiffs failed to plead required elements of declaratory relief, then proffer an inapposite federal standard warranting dismissal of actions brought "pursuant to" or "under" the Declaratory Judgment Act, a claim Plaintiffs did not bring. Third, Defendants offer a constitutional merits argument, seeking to conduct a substantive Second Amendment textual and historical analysis on a Rule 12(b)(6) motion. Finally, Defendants seek a stay pending resolution of an Eleventh Circuit appeal which, by their own telling, should have no effect on the outcome of this case.

**ARGUMENT**

## I.  STANDARD OF REVIEW

"To survive a Rule 12(b)(6) motion, a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, 2023 U.S. App. LEXIS 29727, at *7 (11th Cir. Nov. 8, 2023).  In this Circuit, "[a] claim is facially plausible if it 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (citation omitted).  However, "[l]abels, conclusions, and formulaic recitations of the elements 'will not do.'" *Datum Software, Inc. v. Citizant, Inc.*, 2024 U.S. App. LEXIS 19947, at *6 (11th Cir. Aug. 8, 2024) (citation omitted).

## II.  DEFENDANTS  IGNORE  PLAINTIFFS'  WELL-PLEADED  FACTUAL ALLEGATIONS.

At the outset, Defendants appear to object to the inclusion of legislative history and certain descriptions of governing constitutional standards in Plaintiffs' Complaint, which presents a single Section 1983 claim challenging the constitutionality of Florida's ban on the open carry of firearms under the Second and Fourteenth Amendments to the U.S. Constitution.  Specifically, Defendants seek dismissal of the Complaint because it purportedly includes "conclusory allegations, unwarranted factual deductions and/or legal conclusions," which Defendants explain are not entitled to "the assumption of truth," instead of "specific factual content" to support Plaintiffs' legal claim.  MTD at 4, 5, 4, ECF #24.[1]  But a "dismissal under Rule 12(b)(6) 'is viewed with disfavor and rarely granted,'" *Wanza v. Aetna Health*, 352 F. Supp. 2d 1320, 1321 (S.D. Fla. 2005), and despite listing some 53 paragraphs from Plaintiffs' Complaint to which they apparently object,

---

[1] Because Defendants' Motion is not "paginated properly and consecutively at the bottom center of each page" (*see* Local Rule 5.1(a)(4)), Plaintiffs' references to page numbers are to the ECF pagination located in blue at the top of Defendants' motion.

Defendants fail to explain why any of them is improper, or even which objection (*e.g.*, "conclusory allegations," or "unwarranted factual deductions," "and/or legal conclusions") they assign to which paragraph or portion thereof.

Nor do Defendants explain why the Complaint's dozens of *factual* allegations somehow fail to meet the basic pleading requirement to establish a case or controversy.  On the contrary, Plaintiffs' allegations are more than sufficient to state a Second Amendment claim: Plaintiffs wish to carry handguns openly in public, and are eligible to possess firearms under state and federal law. Compl. ¶¶9-19.  Plaintiffs cannot open carry because Fla. Stat. § 790.053(1) generally prohibits it. *Id.* ¶¶63-68.  Defendants enforce Fla. Stat. § 790.053(1).  *Id.* ¶¶19-25.  Plaintiffs' desired course of conduct – carrying handguns openly in public – is protected by the plain text of the Second Amendment, which makes no distinction as to how the right to "bear arms" may be exercised. *Id.* ¶¶43-47.  That is all that is needed to raise a facial Second Amendment claim sufficient to survive the pleadings stage.

Nor is Defendants' apparent objection to the Complaint's inclusion of the relevant legal standards helpful.  Indeed, it is hardly surprising that Plaintiffs would cite the key cases in a complaint challenging a state law on constitutional grounds.  To be sure, courts within this Circuit have objected to excessive legal argument when it "render[s] the ... Complaint so defective that Defendants are not able to determine the basis and nature of Plaintiff's claim."  *Wright v. Waste Pro U.S., Inc.*, 2020 U.S. Dist. LEXIS 248561, at *12 (S.D. Fla. May 28, 2021).  But Defendants make no allegation that they have been unable to determine the nature or basis of Plaintiffs' single claim here.  Instead, they succinctly summarize Plaintiffs' challenge at the outset: "Plaintiffs allege that Fla. Stat. § 790.053(1) violates the Second and Fourteenth Amendments to the U.S. Constitution." MTD at 2.

Moreover, federal courts recognize that inclusion of relevant legal standards and citations is entirely appropriate in pleadings when (like here) necessary to explain a claim, especially a constitutional one.[2] Thus, as one court explained, "a complaint *must assert a legal argument* that defendants violated a particular law or constitutional provision, and it must allege sufficient facts to support that legal argument." *Gaytan v. State*, 2020 U.S. Dist. LEXIS 205140, at *4-5 (D.N.M. Nov. 3, 2020) (emphasis added); *see also* Martin A. Schwartz, Section 1983 Litigation at 32 (Fed. Jud. Ctr. 2014) (emphasis added) ("Whether the plaintiff has alleged a proper constitutional claim under § 1983 *depends on the meaning of the particular constitutional provision at issue*, not on an interpretation of § 1983."). Citations to the governing legal standards – and conclusions derived therefrom – therefore place Defendants on notice of the precise nature of Plaintiffs' constitutional claim. And again, Defendants' objection ignores whether Plaintiffs have included sufficient *factual* allegations to survive a motion to dismiss. Here, Plaintiffs have.

## III.   DEFENDANTS INVOKE A *STATE LAW* RULE OF PLEADING WHICH HAS NO APPLICABILITY HERE.

Defendants next claim that Plaintiffs have "fail[ed] to allege all elements required for declaratory relief." MTD at 5. For starters, Defendants fail to bridge the logical gap between their assertion that Plaintiffs are not entitled to certain *relief*, and their claim that Plaintiffs' Section 1983 *claim* "should be dismissed." *Id.* But even so, Defendants rely entirely on state law which has no applicability here. Asserting that "the elements required under the federal and state declaratory judgment acts are not materially different," Defendants cite an Eleventh Circuit case which does not stand for that proposition. MTD at 5 (citing *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)). Rather, *Malowney* merely describes the familiar Article III

---

[2] Indeed, a complaint must "give[] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Wanza*, 352 F. Supp. 2d at 1321 n.2.

"case or controversy" requirement such that, to invoke jurisdiction pursuant to 28 U.S.C. § 2201, "there must be a substantial continuing controversy between two adverse parties" which is "real and immediate," not "conjectural, hypothetical, or contingent," and is based on a "definite, rather than speculative threat of future injury." *Id.* at 1347.

But rather than apply that *federal* test to Plaintiffs' *federal* claim brought in *federal* court, Defendants instead proffer a four-part rule of pleading under the *Florida* Declaratory Judgment Act, and assert that Plaintiffs have failed to strictly plead these necessary *state court* elements. MTD at 5 (citing *Ribaya v. Bd. of Trs. of the City Pension Fund for Firefighters & Police Officers*, 162 So. 3d 348, 352 (Fla. 2d Dist. Ct. App. 2015)). This language in this four-part test is drawn directly from the Florida Declaratory Judgment Act, Fla. Stat. § 86.021, not 28 U.S.C. § 2201. Although Defendants assure that this Florida test is "not materially different" from the federal standard (MTD at 5), another judge in this district recently treated them as distinct. *See Sullivan v. Marble Hill, Ltd.*, 2024 U.S. Dist. LEXIS 121041, at *19 (S.D. Fla. July 2, 2024) (distinguishing between federal and state declaratory judgment acts, construing the plaintiffs' claim as one brought under state law, and then applying the state law test). Simply put, Florida case law does not supply the Article III standard to be applied by this Court.

Aside from their invocation of an irrelevant standard, Defendants never assert that Plaintiffs' Complaint fails to describe a "case or controversy" under federal law.[3] It clearly does, as "[s]ection 1983 broadly authorizes suit against state officials for the 'deprivation of any rights' secured by the Constitution," *Nance v. Ward*, 597 U.S. 159, 167 (2022), and Plaintiffs' Complaint

\

---

[3] *See also Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) ("a civil action 'arising under the Constitution, laws, or treaties of the United State'" is a "provision for federal-question jurisdiction [] invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983).").

alleges Defendants' enforcement of Fla. Stat. § 790.053(1) violates their Second and Fourteenth Amendment rights. Compl. ¶¶97-111. Defendants dispute the merits of this claim, arguing that the Second Amendment does not protect open carry. MTD at 12-16. Thus, a real and ongoing "controversy" clearly exists between the parties.

**IV.    DEFENDANTS ENTREAT USE OF AN INAPPOSITE NINE-PART TEST FOR DECLARATORY JUDGMENT ACTIONS, WHICH DOES NOT APPLY TO PLAINTIFFS' SECTION 1983 CLAIM.**

Defendants next make the curious claim that "Plaintiffs' Complaint should be dismissed under 28 U.S.C. § 2201(a)," the federal Declaratory Judgment Act. MTD at 6. But the nine-part test Defendants cite, derived from the Eleventh Circuit's decision in *Nat'l Trust Ins. Co. v. S. Heating & Cooling, Inc.*, 12 F.4th 1278 (11th Cir. 2021), expressly applies to "an action *under* the Declaratory Judgment Act." *Id.* at 1282 (emphasis added). But Plaintiffs' single cause of action is not brought pursuant to the Declaratory Judgment Act, "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). Rather, Plaintiffs bring a Second and Fourteenth Amendment claim under 42 U.S.C. § 1983, which expressly creates a "civil action for deprivation of rights." *Cf.* Complaint for Declaratory Judgment ¶7, *Nat'l Trust Ins. Co. v. S. Heating & Cooling, Inc.*, No. 5:19-cv-00268-LCB (N.D. Ala. Feb. 13, 2019), ECF #1 ("NTIC brings this *declaratory judgment action* pursuant to the provisions of 28 U.S.C. § 2201 to determine the rights and duties of the parties."), *with* Compl. Count I ("U.S. Const. amends. II, XIV, 42 U.S.C. § 1983"). Defendants cite no legal authority – and Plaintiffs are aware of none – authorizing courts to dismiss Section 1983 claims (or otherwise decline to provide declaratory *relief*) under the nine-part set of "guideposts" for exercising jurisdiction over declaratory judgment *actions*.

By way of background, a freestanding action under the Declaratory Judgment Act is

designed to provide certainty to parties *before* injury occurs, such as an insurer asking for clarification that it is not liable to an insured for a potential claim, or a company seeking a declaration of non-infringement of a patent. *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1308 (S.D. Fla. 2017) ("Generally, the Act allows prospective defendants to sue to establish non-liability, or affords a party threatened with liability an opportunity for adjudication before its adversary commences litigation."). In stark contrast, Section 1983 provides a mechanism to remedy a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To decide whether a plaintiff can proceed under Section 1983, courts do not apply the nine-part discretionary balancing test Defendants proffer, but instead ask whether the plaintiff has plausibly alleged "that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).[4] Plaintiffs clearly meet that simple standard here.

Aside from Defendants' offering (for the second time) of an entirely inapplicable legal test, their subsequent series of arguments do not hold water, for any number of reasons.

For starters, Defendants assert that there are "parallel state-court proceedings" which not only impact but apparently control this case. MTD at 6, 9 (emphasis original) (referencing the Supreme Court's inapposite decision discussing a "declaratory judgment suit," and cautioning against the exercise of jurisdiction "'where ***another suit is pending in a state court presenting the same issues***, not governed by federal law, between the same parties'"). But aside from the obvious (this is not a "declaratory judgment suit"), Plaintiffs in this case have no similar action (or action

---

[4] Plaintiffs' Complaint tracks the litigation in *Bruen*. *See Bruen* at 16 ("Petitioners sued respondents for *declaratory and injunctive relief* under Rev. Stat. 1979, 42 U. S. C. §1983, alleging that respondents violated their Second and Fourteenth Amendment rights….") (emphasis added).

of any kind) pending against Defendants in "a state court." To be sure, Defendants do offer two Florida state court cases that they claim "assert almost identical arguments as" here (MTD at 9),[5] but that would mean those cases *are* "governed by federal law" – the opposite of what is required. Defendants offer no cognizable theory as to how a Second Amendment argument raised in a state court proceeding (even if that is true of the cases Defendants cite) provide those state courts with an authority Defendants call "prior jurisdiction" (MTD at 10), somehow divesting this Court of authority to decide this federal case.[6] Nor do Defendants explain how a Florida state court's answer to the Second Amendment questions raised here would bind *this* Court or resolve *this* case,[7] not to mention how actions pending in the First and Sixth Florida Judicial Districts will have any

---

[5] Defendants claim that the "Plaintiffs [in those cases] assert almost identical arguments as presented in the instant action." MTD at 9. But the "plaintiffs" in *Guzman* and *McDaniels* are actually criminal *defendants* facing criminal charges.

[6] Defendants also point to the declaration filed by GOA Florida Director Luis Valdes, which recounts GOA member Jon Leggett's story of being arrested on his own property for open carry, along with Valdes' own near arrest when his concealed carry firearm became briefly visible. *See* Compl. Ex. A. Defendants opine – without citing any authority – that this declaration cannot inform this Court's decision because "such facts would be better situated in the [state] court that had jurisdiction over the incident...." MTD at 10. Defendants do not explain why Plaintiffs providing a description as to how their members and supporters' Second Amendment rights have been infringed throughout the state somehow means that only state courts can vindicate their federal rights.

Later, Defendants claim that "the Florida trial court is in a much better position to evaluate" Plaintiffs' "factual allegations," which "occurred in the State of Florida," than "is this federal court." MTD at 12. But the fact that the Second Amendment infringement Plaintiffs seek to remedy "occurred in the State of Florida" does not mean that this Court – which is also located "in the State of Florida" – cannot hear this case. Defendants claim that only Florida courts can decide "whether or not the restriction on open carry is reasonable or in violation of the Second Amendment of the U.S. Constitution *as well as the Florida Constitution*." MTD at 12 (emphasis added). But Plaintiffs' one-count Complaint plainly *does not raise* a claim under "the Florida Constitution," and there is absolutely no state law question for this Court to resolve. Even if there were, there is no such thing as reverse-removal (28 U.S. Code § 1446) to state court.

[7] *See, e.g.*, *Rural Water Dist. No. 3 v. Owasso Utils. Auth.*, 530 F. Supp. 818, 823 (N.D. Okla. 1979) (collecting Supreme Court cases) ("Federal courts are not bound by State Court precedents on federal questions. The Federal Courts are not bound by State Court decisions as to the effect of the Federal Constitution or the effect of Federal Statutes.").

impact on Plaintiff Hughes, who resides in the *Fourth* Judicial District.  Instead, Defendants parade

a series of vague questions that they imagine any decision by this Court *would not resolve* (MTD

at 9) – as if that precludes this Court from answering the discrete constitutional question posed

here.

Second, in something of a reverse-Supremacy Clause argument, Defendants claim that

Florida "has an interest in having the issues raised" in this case "decided in the state courts."  MTD

at 7.  Unsurprisingly, Defendants provide no citation to any authority holding that *federal* court is

not the place to vindicate *federal* constitutional rights under a *federal* statutory cause of action.

On the contrary, "[f]ederal-question jurisdiction affords parties a federal forum in which 'to

vindicate federal rights'...."  *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 438 (2019).

Defendants also fail to mention that, to the extent that Florida "has an interest" in this case,

Plaintiffs provided a Notice of Constitutional Question to the Florida Attorney General, apprising

her of this litigation pursuant to Fed. R. Civ. P. 5.1 and 28 U.S.C. § 2403 (even though not required,

because a suit against at least some of these Defendants constitutes a suit against the State).[8]  ECF

#6.  The Florida Attorney General chose not to intervene, and certainly has not raised any objection

to this federal case being heard in federal court.  To the contrary, as counsel of record for Defendant

Bakkedahl recently reported to the press, the Attorney General's "office turned down a request to

represent the prosecutor" and "also declined a request by the St. Lucie County sheriff to get

involved in the case."[9]

---

[8]  *See, e.g., Scheider v. Leeper*, No. 3:15-cv-364-J-34JRK, 2016 U.S. Dist. LEXIS 30839, at *7 (M.D. Fla. Mar. 10, 2016) (a "§ 1983 claim against the State Attorney is treated as a claim against the State of Florida.") (collecting cases).

[9]  *See* G. Fineout, "Florida attorney general skips defending law banning open carry," Politico, Sep. 23, 2024, https://www.politico.com/news/2024/09/23/florida-open-carry-ashley-moody-00180553.

Third, Defendants opine that "reasonable regulation of the right to carry ... has historically fallen upon each individual State." MTD at 7; *see also id.* at 9 ("regulation of the right to bear and carry remains with each individual State"). Disputing this Court's jurisdiction over clear federal questions, Defendants posit that Second Amendment challenges to state carry statutes "should be determined in the state's courts." *Id.* at 9; *see also id.* at 11 (theorizing that, if this Court allows this case to proceed, it will "unnecessarily stand in the shoes of the state court[s]," and that this Court will "improperly encroach on Florida's jurisdiction"). But if that were true, then the Supreme Court never would have decided *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), a Second (and Fourteenth) Amendment challenge *to a state carry statute*.

Fourth, referencing a so-called state's "*right of regulation* of the Constitutional right to bear arms" that simply does not exist, Defendants suggest that Florida's open carry ban should be immune from Second Amendment challenge because it "is explicitly established in the Florida Constitution" that "the manner of bearing arms may be regulated by law." MTD at 8 (emphasis added) (citing Fla. Const. art. I, § 8(a)). But it is axiomatic that a state constitutional provision which provides *less* protection than its federal counterpart does not water down the federal right. After all, "[t]he Supremacy Clause enshrines the basic principle that federal law supersedes state law whenever they conflict," and "[t]his principle applies ... to direct clashes between federal and state constitutions...." *Kordash v. United States*, 51 F.4th 1289, 1293 (11th Cir. 2022). Courts accordingly hold that "[t]he United States Constitution sets a floor which the state may not go below," *Ortiz v. Jones*, 2017 U.S. Dist. LEXIS 102981, at *9 (S.D. Fla. June 30, 2017) (quoting *Derden v. McNeel*, 938 F.2d 605, 609 (5th Cir. 1991)), an arrangement to which the states agreed upon admission to the Union.

Fifth, Defendants predict that they ultimately will prevail on the merits, surmising that bans on "bear[ing] arms" comport with the Second Amendment and the Supreme Court's decision in *Bruen*. MTD at 8 (relying on a dissenting opinion from *Drake v. Filko*, 724 F.3d 426, 427 (3d Cir. 2013), an out-of-circuit, pre-*Bruen* case). Papering over the lack of any *actual* authority for this position, Defendants misrepresent *Bruen*, asserting that "States were able to 'lawfully eliminate one kind of public carry ... so long as they left open the [other] option.'" MTD at 13 (citing *Bruen*, 597 U.S. at 59); *see also* at 15 (emphasis added) (claiming that "allowing *one* manner of carriage while prohibiting *another*" is permissible). But the important parts of the Supreme Court's quotation are (i) the part Defendants replaced with an ellipsis and (ii) the part Defendants replaced with brackets. *See also* at 16 (twice more carefully editing the Supreme Court's actual words). What the Supreme Court *actually* said was that there was some post-Reconstruction history wherein "States could lawfully eliminate one kind of public carry – ***concealed carry*** – so long as they left open the option ***to carry openly***." *Bruen*, 597 U.S. at 59 (emphases added). In other words, the "history" the Supreme Court pointed to is *precisely the opposite* of the situation in Florida, which generally allows concealed carry, while banning the historically unregulated open carry. Nor did the Supreme Court conclude – as Defendants suggest – that this late-coming history of *concealed carry* regulation means that "restrictions on *open carry* are constitutional and do not infringe on Plaintiffs' Second Amendment rights." MTD at 13 (emphasis added). Rather, the Court merely was summarizing "[t]he historical evidence *from antebellum America*," not from the Founding – evidence which had been proffered by New York and which the Court found necessary to address. *Bruen*, 597 U.S. at 59, 50 (emphasis added). As discussed further below and in Plaintiffs' Complaint, it is Founding-era history that is key, with the Reconstruction era playing a merely confirmatory role. *See id.* at 37 ("19th-century evidence [i]s 'treated as mere confirmation

of what the Court thought had already been established.'"). Regardless, Defendants have proffered no historical evidence of bans on *open* carry.

Sixth, Defendants accuse Plaintiffs of "procedural fencing" (MTD at 10), "an umbrella term for the improper use of procedural mechanisms to avoid a merits ruling or to forum shop." *Nat'l Trust Ins. Co.*, 12 F.4th at 1287. In support of this aspersion, Defendants claim that "Florida courts have ... even within the cannon proposed by Plaintiffs under *Heller* and *Bruen* ... refused to deem Fla. Stat. § 790.053 unconstitutional." MTD at 10. But Defendants fail to identify any state case that applied *Bruen* and upheld Fla. Stat. § 790.053. Nor are Plaintiffs aware of any. Nevertheless, Defendants surmise, by seeking relief for constitutional infringements from this Court, Plaintiffs are improperly "avoiding entering the state courts" and seeking to "nullify[] the State courts' position as previously established." *Id.* at 10-11; *see also id.* at 11 (asking this Court to "dismiss this action and require Plaintiffs to file the inquiry with the state court in their respective jurisdiction"). Defendants offer not a shred of evidence to support their claim that Plaintiffs' filing in this Court was improper. Nor do Defendants provide any authority for the notion that a prior state court ruling on the meaning of federal law precludes a ruling here. Neither the named Plaintiff nor the organizational Plaintiffs has ever brought a Second Amendment challenge to Florida's open carry ban in state court. Nor would it matter if they had, as this Court is not bound by a state court's interpretation of federal law. *See* Sec. III & n.7, *supra*.

Defendants' scattershot and unsupported objections to this federal Court deciding this federal case do not clear the starting gate. Defendants' arguments misunderstand the nature of the *federal* question posed here, and grossly misconstrue the relationship between federal and state courts. *See, e.g.*, MTD at 11 (opining that "state courts ... are better positioned" than federal courts to answer Second Amendment questions). Defendants accuse Plaintiffs of "wasting scarce federal

judicial resources." MTD at 10. But if any party is guilty of that offense, it is Defendants – not only for their initial failure to respond timely to Plaintiffs' Complaint, leading to this Court's entry of default judgment (ECF #13), but also their subsequent Motion to Dismiss, which raises numerous implausible and entirely unsupported arguments.

## V.     DEFENDANTS IMPROPERLY ARGUE THE MERITS IN THEIR MOTION TO DISMISS.

Soon after accusing Plaintiffs of including too much on the law (MTD at 4-5), Defendants engage in full-blown Second Amendment merits analysis, applying a substantive constitutional framework in a motion to dismiss. *See, e.g.*, MTD at 8 ("Fla. Stat. § 790.053 satisfies that test"); at 9 ("Fla. Stat. § 790.053 does not wholly restrict[10] any individuals [sic] right to bear or carry, but rather limits how they can carry"); at 13-16 (purporting to conduct a textual analysis, followed by a historical argument, tracking *Bruen*'s Second Amendment standard). This is a quintessential merits analysis.[11] Courts routinely hold – within this Circuit and without – that such merits argumentation at this stage is both "inappropriate" and "premature."[12] It is therefore unnecessary

---

[10] *But see Jackson v. City & County of San Francisco*, 576 U.S. 1013, 1016 (2015) (Thomas, J., dissenting from denial of certiorari) ("nothing in … in [*District of Columbia v. Heller*, 554 U.S. 570 (2008)] suggested that a law must rise to the level of the absolute prohibition at issue in that case to constitute a 'substantial burden' on the core of the Second Amendment right"); *Bruen*, 597 U.S. at 17 (explaining *Heller*'s standard applies to mere "regulation[s]," not just absolute prohibitions).

[11] *See, e.g., United States v. Tita*, 2022 U.S. Dist. LEXIS 231140, at *16 (D. Md. Dec. 22, 2022) (emphasis added) ("*Turning to the merits*, the Court must first determine whether the Second Amendment reaches the conduct delineated in 18 U.S.C. § 922(k)."); *B&L Productions, Inc. v. Newsom*, 661 F. Supp. 3d 999, 1006 (S.D. Cal. 2023) (emphasis added) ("*Turning to the merits* … [t]he *Bruen* Court set forth a test which requires courts to assess whether 'modern firearms regulations are consistent with the Second Amendment's text and historical understanding.'"); *United States v. Velazquez*, 2024 U.S. Dist. LEXIS 1690, at *13 (D.N.J. Jan. 4, 2024) (emphasis added) ("*Turning to the merits* of Velazquez' motion, the Government argues Velazquez cannot prevail on his Second Amendment challenge....").

[12] *See, e.g., Grady Mem'l Hosp. Corp. v. Grady Baby Co. & Apparel LLC*, 2023 U.S. Dist. LEXIS 236514, at *7 (N.D. Ga. Dec. 5, 2023) ("To the extent that Defendants seek to attack the merits of Plaintiff's case, such an attack is premature and the Court declines to consider evidence

for Plaintiffs to litigate the merits of the proper application of *Bruen*, in response to a motion to dismiss, other than to simply note that neither *Heller* nor *Bruen* dispositively decided an open carry challenge. To the extent that Defendants' argument is purportedly "based on the Supreme Court's previous ruling" (MTD at 13) on the issue here, no such ruling exists.

## VI.  DEFENDANTS' REQUEST FOR A STAY IS A RED HERRING.

Defendants conclude by asserting that this Court should enter a stay pending the Eleventh Circuit's potential resolution of "an ongoing scholarly debate" as to the proper temporal focal point for Second Amendment analysis. *See NRA v. FDLE*, No. 12314 (11th Cir.); MTD at 17 ("there is no precedence [sic] upon which to base the historical analysis of public carry licensing regime [sic] and restrictions on open carry"). But as Defendants already argued, "this court *need not conduct* an independent historical analysis" – and thus the 1791 vs. 1868 question is irrelevant – because "*Bruen* expressly approved of public carry licensing systems like Florida's...."[13] MTD at 13, 15 (emphasis added); *see also* at 13 (claiming that the "Second Amendment's text" – "bear arms" – does not cover "openly carrying firearms in public," meaning Defendants believe that no historical analysis is necessary under the *Bruen* framework).[14] At no point do Defendants reconcile

---

and additional merits in the context of the pending Motion to Dismiss."); *Aetna, Inc. v. Open MRI & Imaging of Rochelle Park, P.A.*, 2022 U.S. Dist. LEXIS 212398, at *16 (D.N.J. Nov. 23, 2022); *Standard Furniture Mfg. Co. v. LF Prods. Pte. Ltd.*, 2017 U.S. Dist. LEXIS 174293, at *13 (C.D. Cal. June 13, 2017); *Davis v. Magna Int'l of Am., Inc.*, 2021 U.S. Dist. LEXIS 62106, at *19 (E.D. Mich. Mar. 31, 2021); *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 2019 U.S. Dist. LEXIS 161339, at *27 (E.D. Va. Sept. 9, 2019).

[13] Importantly, Defendants do not allege that the question presented in this case is currently pending in another court. Rather, they claim only that the Eleventh Circuit might shed more light on a discrete methodological issue – 1791 v. 1868. *But see Bruen*, 597 U.S. at 37 ("we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791").

[14] Defendants argue that Plaintiffs' proposed conduct –publicly bearing arms "openly" – is not even presumptively covered by the Second Amendment's plain text "bear arms." MTD at 14 (claiming that, "[i]f the framers had intended to guarantee a right to bear arms openly, 'nothing would have been simpler' than to say so."). This argument is preposterous. The framers *did say*

their diametric positions that the *Bruen* historical analysis is both *critical* and also *unnecessary*.

At bottom, however, Defendants present a purely academic question that this Court need not resolve here. That is because "the public understanding of the right to keep and bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public carry." *Bruen*, 597 U.S. at 38. As Plaintiffs have explained, there were *no* open carry restrictions in *either* 1791 *or* 1868. See Compl. at ¶¶ 91-94. Thus, as in *Bruen* and in *Rahimi* (144 S. Ct. 1889, 1898 n.1), "[w]e need not address this issue today...." *Bruen*, 597 U.S. at 38; *see also* MTD at 52 n.16 (identifying the late-1800s advent of "laws prohibiting the *concealed* carry of pistols," but never *open* carry).

But even if the 1791 vs. 1868 debate were critical here, while "scholars" may be debating the question, the Supreme Court has not been part of that debate.[15] Rather, the Court's existing precedents compel an analytical focus on the Founding. Indeed, the Court consistently uses 1791 as the focal point for interpreting *all manner* of constitutional provisions, with subsequent history serving a merely confirmatory role.[16] The Second Amendment is no exception, because it is not

---

*so*. As the Supreme Court has explained, "bear" is a broad term that means to "'wear, bear, or carry [*i.e.*, in one's hands, slung on one's back, etc.] ... upon the person [*i.e.*, openly] or in the clothing or in a pocket [*i.e.*, concealed] ....'" *Heller* at 584. And if Defendants' argument were correct, then the opposite would also be true – "[i]f the framers had intended to guarantee a right to bear arms [*concealed*], 'nothing would have been simpler' than to say so." Thus, under Defendants' logic, the Second Amendment's plain text "bear arms" would presumptively protect *neither open nor concealed* carry. This is like saying that the First Amendment protects the right to speak – but not on *that* topic – or the right to practice one's religion – just not *that* religion. Or that the Second Amendment's term "arms" does not even presumptively protect "handguns" because it does not expressly enumerate *that* type of arms. Notably, the Supreme Court in *Bruen* did not see the need to hyper-specify the type of proposed conduct, but broadly stated that the Plaintiffs' "proposed course of conduct" covered by the plain text was "*carrying* handguns publicly for self-defense." *Bruen* at 32 (emphasis added).

[15] Nor have Defendants ever expressly disputed that 1791 is the proper historical focal point.

[16] *See, e.g.*, *Lynch v. Donnelly*, 465 U.S. 668, 674 (1984) (Establishment Clause); *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 482 (2020) (noting that "a tradition" that "arose in the

"a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 597 U.S. at 70; *see also* at 37 ("we have made clear that individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government"); *id.* ("we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791").

Perhaps most importantly, a stay of this case is unwarranted under the standards federal courts typically apply. As the Supreme court observed, "[o]nly in *rare circumstances* will a litigant in one cause be compelled to stand aside while a litigant in another settles *the rule of law that will define the rights of both.*" *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (emphases added).[17] As another district court more recently summarized, those "rare circumstances" include "whether (i) a final result is imminently forthcoming;[18] (ii) the impending decision would have an impact on the issues raised in the instant matter; (iii) the moving party demonstrates hardship in moving forwarding; and (iv) a stay will prejudice the non-moving party." *McMillion v. Rash Curtis & Assocs.*, 2018 U.S. Dist. LEXIS 101700, at *9 (N.D. Cal. June 18, 2018); *see also Gray v. Target*

---

second half of the 19th century," even in "more than 30 States[,] ... cannot by itself establish an early American tradition" as to Free Exercise Clause); *Virginia v. Moore*, 553 U.S. 164, 168 (2008) (Fourth Amendment); *Gamble v. United States*, 587 U.S. 678, 683 (2019) (Fifth Amendment); *Ramos v. Louisiana*, 590 U.S. 83, 91 (2020) (Sixth Amendment); *Timbs v. Indiana*, 586 U.S. 146, 152-53 (2019) (Eighth Amendment). The sole exception, *Apodaca v. Oregon*, 406 U.S. 404 (1972), "was the result of an unusual division among the Justices," *McDonald v. City of Chicago*, 561 U.S. 742, 766 n.14 (2010), and the Court overruled that "badly fractured set of opinions." *Ramos*, 590 U.S. at 93.

[17] As the Eleventh Circuit recounted, "federal courts ... have a 'virtually unflagging obligation. . . to exercise the jurisdiction given them....'" *New Ga. Project, Inc. v. AG*, 106 F.4th 1237, 1241 (11th Cir. 2024) (citations omitted).

[18] The imminence requirement bears emphasis. If one could obtain a stay of a case any time a higher court was considering any *discrete* issue that might play *some* part in a court's analysis, stays could be infinite.

*Corp.*, 2014 U.S. Dist. LEXIS 207152, at *2 (S.D. Fla. Jan. 27, 2014) (stay must have "proper justification").  Because (i) *NRA* will not "define the rights of" Plaintiffs to open carry, (ii) the Eleventh Circuit's decision may not impact (much less resolve) analysis Plaintiffs' claim, (iii) Defendants have alleged no "hardship" in proceeding with this case, and (iv) Plaintiffs' constitutional rights will continue to be infringed pending any stay, Defendants' request for a stay fails even to clear the starting gate.

## CONCLUSION

For the reasons stated, Defendants' motion to dismiss or stay (ECF #24) should be denied.

Respectfully submitted this 30th day of September 2024,

 **KATZ & PHILLIPS, P.A.**
Attorneys for the Plaintiffs
509 W. Colonial Drive
Orlando, Florida 32804
Tel./Fax: 321.332.6864
Pleadings: pleadings@kplegalteam.com
Email: jphillips@thefirearmfirm.com


**JAMES D. PHILLIPS, JR., ESQUIRE**
Florida Bar No.: 22846


Stephen D. Stamboulieh *
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440 (T)
stephen@sdslaw.us
Mississippi Bar No. 102784
*Admitted Pro Hac Vice*


Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on September 30, 2024, a copy of the foregoing document or pleading has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to: Arthur Ivan Jacobs, Esquire, Counsel for Defendants Bakkedahl and SAO, 961687 Gateway Boulevard, Suite 201-I, Fernandina Beach, FL 32034; buddy@jswflorida.com; Summer M. Barranco, Esquire, and Richard A. Giuffreda, Esquire, Counsel for Defendants Sheriff Pearson and St. Lucie County Sheriff's Office, 2455 E. Sunrise Blvd, Suite 1216, Fort Lauderdale, FL 33304; summer@purdylaw.com and richard@purdylaw.com.

**JAMES D. PHILLIPS, JR., ESQUIRE**
Florida Bar No.: 22846