IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Civil Action No. 2:24-cv-14250-JEM

GUN OWNERS OF AMERICA, INC.,
GUN OWNERS FOUNDATION, and
RICHARD HUGHES,

    Plaintiffs,

v.

SHERIFF KEITH PEARSON, in his official
capacity as Sheriff of St. Lucie County, the
ST. LUCIE COUNTY SHERIFF'S OFFICE,
THOMAS BAKKEDAHL, in his official capacity
as the State Attorney for the 19th Judicial Circuit of
Florida, and the STATE ATTORNEY'S OFFICE
for the 19th Judicial Circuit of Florida,

    Defendants.

_____/

## PLAINTIFFS' MOTION FOR FINAL JUDGMENT AFTER DEFAULT

As directed by this Court's September 10, 2024 order (ECF #18), and pursuant to Fed. R. Civ. P. 55(b), Plaintiffs submit this Motion for Final Judgment After Default, and in support thereof state as follows:

### MEMORANDUM OF LAW

Plaintiffs initially filed their Complaint for Declaratory and Injunctive Relief on August 6, 2024, alleging a single cause of action under 42 U.S.C. § 1983 for violations of their Second and Fourteenth Amendment rights. ECF #1. Although attorneys for both pairs of Defendants contacted Plaintiffs' counsel to seek consent to a request for extension of time to respond to Plaintiffs' Complaint (*see* ECF #20 at 2, ECF #23 at 5), neither set of Defendants actually filed such a request with the Court. After both pairs of Defendants failed to seek such extension from the Court or

1

otherwise timely respond to Plaintiffs' Complaint, this Court issued an order on September 6, 2024 which was entered on September 9, 2024, directing the Clerk to enter a default, which was then entered the same day. *See* ECF #13, #14.

Later that same day, Defendants Thomas Bakkedahl and the State Attorney's Office ("SAO Defendants") filed their previously prepared "Consent Motion for Extension of Time (ECF #16), which (as they note) had been executed prior to the Court's entry of default. ECF #20 ¶3. The Court then entered a second Order on Default Final Judgment Procedure, ordering that, "**[o]n or before September 23, 2024**, Defendants shall file" their "answer or other response to the Complaint" and "a motion to set aside the Clerk's Default that shows good cause for Defendants' failure to timely respond to the Complaint." ECF #18 (emphasis in original). The Court also ordered that "**[o]n or before September 30, 2024**, Plaintiff shall file a motion for final default judgment...." *Id.*

Thereafter, on September 10, 2024, the SAO Defendants filed a "Motion to Vacate Clerk's Default." ECF #20. Acknowledging that they had been served with a copy of Plaintiffs' Complaint and Summons on August 9, 2024 (*id.* ¶1), making their response due on August 30, 2024 (*see* ECF #13 at 1), the SAO Defendants explained that "the executed Consent Motion for Extension of Time was not filed until September 9, 2024." *Id.* ¶5. The SAO Defendants asserted that this was "[d]ue to excusable neglect" (*id.*), but provided no further explanation. Then, noting that they "intend to file a substantive pleading," the SAO Defendants requested that the Court "vacate" the default and "reopen the case." *Id.* ¶¶8-9.

Then, on September 13, 2024, Defendants Sheriff Keith Pearson and the St. Lucie County Sheriff's Office ("SLSO Defendants") filed an "Unopposed Motion to Set Aside Clerk's Default." ECF #23. Acknowledging that they had been served with a copy of Plaintiffs' Complaint and

2

Summons on August 12, 2024 (*id.* ¶2), making their response due on September 3, 2024 (*see* ECF #13 at 1), the SLSO Defendants explained that, although the parties "agreed to an extension of time," "the existence of this agreement was inadvertently never brought to the Court's attention at that time … due to excusable neglect…." *Id.* ¶3. Noting that they "intend to file their substantive response to the Complaint by the Court's deadline of September 23, 2024," the SLSO Defendants requested that the Court "re-open the case and set aside the Clerk's Default…." *Id.* ¶5; Prayer for Relief. In support, the SLSO Defendants noted that, although they "timely conferred with Plaintiffs' counsel" regarding obtaining an extension, "due to mere oversight, the Court was inadvertently never apprised of this agreement nor was an extension of time obtained from the Court at that time." *Id.* at 5.

Subsequent to their motions to "vacate" and "set aside" the default, the SAO Defendants filed a "Motion to Dismiss or, in the Alternative, to Stay" on September 17. ECF #24. On September 23, 2024, Defendant Pearson – but not the St. Lucie County Sheriff's Office[1] – filed a "Motion to Dismiss or, in the Alernative [sic] Motion to Stay." ECF #25. Plaintiffs are filing their responses to those motions contemporaneously with this motion.

## ARGUMENT

### I. STANDARD FOR FINAL DEFAULT JUDGMENT.

The Federal Rules of Civil Procedure allow the Clerk to enter a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend…." Fed. R. Civ. P. 55(a). After the Clerk enters a default, the plaintiff must then apply to

---

[1] To date, Defendant St. Lucie County Sheriff's Office does not appear to have filed any responsive pleading to Plaintiffs' Complaint, as only Defendant Sheriff Pearson filed a motion to dismiss or stay. *See* ECF #25 (listing only Defendant Pearson on the face of the Motion); *cf.* ECF #23 (filed on behalf of both the Sheriff and the Sheriff's Office).

3

the Court to enter a default judgment. Fed. R. Civ. P. 55(b). The decision whether to grant a default judgment "is within the trial court's discretion." *Hue v. Samuel's Auto Fl., LLC*, 2021 U.S. Dist. LEXIS 232375, at *3 (S.D. Fla. Dec. 1, 2021). However, "a defendant's default does not in itself warrant the court entering a default judgment." *Id.* Rather, "the Court must review the sufficiency of the complaint." *Id.*

As part of that inquiry, a defendant in default "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citation omitted). However, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). And a "defendant is not held to … admit conclusions of law…." *Fin. ERC LLC v. Lee Gause DDS PC*, 2024 U.S. Dist. LEXIS 130763, at *4 (S.D. Fla. July 22, 2024). As such, "before granting default judgment, 'the district court must ensure that the well-pleaded allegations of the complaint … actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought.'" *U.S. Sur. Co. v. Chavez S. Fla. Interiors, Inc.*, 2024 U.S. Dist. LEXIS 79629, at *4-5 (S.D. Fla. Apr. 30, 2024) (quoting *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 1007)).

As the SLSO Defendants note, the Eleventh Circuit has a "strong policy of determining cases on their merits and [] therefore view[s] defaults with disfavor." *U.S. Sur. Co.*, 2024 U.S. Dist. LEXIS 79629, at *3-4 (citing *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003)). Nor are Plaintiffs aware of any instance where a state statute has been declared unconstitutional or its enforcement enjoined through entry of a final default judgment. Nevertheless, "default judgment is entirely appropriate and within the District Court's discretion

4

to render where [a] defendant has failed to defend or otherwise engage in the proceedings." *Id.* (citation omitted).

## II. DEFENDANTS HAVE NOT CLEARLY ESTABLISHED "GOOD CAUSE" TO SET ASIDE THE ENTRY OF DEFAULT.

For starters is the issue of Defendants' pending motions to "vacate" and "set aside" the Clerk's entry of default. ECF #20, #23. If this Court were to grant those motions, then it would seem Plaintiffs' instant motion would become moot. However, it is highly questionable whether Defendants have made a showing sufficient to meet the threshold to have their default set aside.

Because "a default judgment has not been entered in this case, Fed. R. Civ. P. 55(c) … is the proper vehicle for considering whether [a] default should be set aside." *Reddish v. City of Albany*, 2013 U.S. Dist. LEXIS 64634, at *3 (M.D. Ga. May 7, 2013). Under Rule 55(c), a "court may set aside an entry of default for good cause…." *Id.* It is "[t]he defaulting party [who] bears the burden to establish good cause to set aside a Clerk's default." *Caro v. HG Wellness, LLC (In re Caro)*, 657 B.R. 888, 894 (Bankr. M.D. Fla. 2024). The Eleventh Circuit explains that "'[g]ood cause' is a mutable standard, varying from situation to situation. It is also a liberal one – but not so elastic as to be devoid of substance." *Compania Interamericana Exp.-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (citation omitted). Thus, "[c]ourts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Id.* Courts also consider "whether the defaulting party acted promptly to correct the default." *Id.* Finally, "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief. *Id.* at 951-52 (citation omitted).

5

Defendants' motions to vacate and set aside the entry of default (ECF #20, #23) do not clearly establish "good cause" to set aside the Clerk's entry of default. The SAO Defendants, for example, reference both the Rule 55(c) "good cause" standard for setting aside a default and the Rule 60(b) "excusable neglect" standard for relief from a final default judgment. ECF #20 ¶¶6-7. But "[t]he excusable neglect standard … is more rigorous than the good cause standard.…" *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990). For whatever reason, the SAO Defendants assert that they satisfy the higher standard, claiming in conclusory fashion that their request for an extension of time "was not filed until September 9, 2024" and that this was "due to excusable neglect." *Id.* ¶5. But critically, the SAO Defendants do not provide any details, much less explain why their default occurred, or what series of events led to their failure to seek an extension from this Court.

The SLSO Defendants, for their part, do only marginally better. First, they accurately identify the standard to be applied as "good cause." ECF #23 at 4. And they explain that it was initially "in-house counsel" for the SLSO Defendants who sought an extension from Plaintiffs, prior to current counsel for the SLSO Defendants entering an appearance, which occurred only after default was entered. *Id.* at 5. Yet like the SAO Defendants, the SLSO Defendants do not provide any specifics as to why their failure to actually seek an extension occurred, other than to allege in conclusory fashion that it was "due to mere oversight" and thus "good cause exists." *Id.*

As noted, "[t]he defaulting party bears the burden to establish good cause to set aside a Clerk's default." *Caro*, 657 B.R. at 894. To be sure, this is not generally an exacting standard. *See Ferreiro v. Simply Right, Inc.*, 2016 U.S. Dist. LEXIS 96037, at *3 (M.D. Fla. July 22, 2016) (finding "good cause" when "failing to timely respond to the Complaint in this matter was an administrative oversight due to miscommunications by management and clerical staff of

Defendant"); *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1334 (11th Cir. 2014) (an attorney used to practicing in state court and unfamiliar with federal rules *might* constitute "good cause"); *Ruggiano v. Orlando Custom Home Builders LLC*, 2022 U.S. Dist. LEXIS 4544, at *2 (M.D. Fla. Jan. 10, 2022) (finding "Defendants have shown the requisite good cause" after they "failed to timely respond to the complaint due to an administrative oversight" that the defendants had explained in greater detail in their motion).

But even though the "good cause" standard is not particularly taxing, by failing to provide *any detail at all* about the circumstances that led to their default, Defendants have failed to meet their "burden to establish good cause." *See Caro*, 657 B.R. at 895 (defendant "offered nothing that might aid this Court in concluding his lack of responsiveness was due to circumstances beyond his control or any other justification that might permit this Court to find good cause exists to set aside the Clerk's default."); *see also Drip Capital Inc. v. Elite Catch Seafood LLC*, 2023 U.S. Dist. LEXIS 43239, at *12 (S.D. Fla. Mar. 14, 2023) (citation omitted) (requiring "'something more than a mere request or flimsy excuse' … supported by [some]thing more than generalizations and wholly undeveloped arguments and conclusions … to set aside a default").

Nor did Defendants offer argument about any of the *other* factors for setting aside an entry of default, including whether "setting it aside would prejudice the adversary," "whether the defaulting party presents a meritorious defense," and "whether the defaulting party acted promptly to correct the default." *See* ECF #23 at 4 (announcing the proper factors for consideration, but then failing to provide any analysis at all). To be sure, Plaintiffs cannot claim any real prejudice to setting aside the default (other than legal time expended on this issue), and both sets of Defendants acted promptly to correct the default. But tellingly, neither set of Defendants even makes such allegations in their motion.

7

Neither has either set of Defendants alleged that they "present[] a meritorious defense." Indeed, as Plaintiffs explain in their responses to Defendants' motions to dismiss or stay, neither set of Defendants has presented a *single* colorable defense to Plaintiffs' allegations. Instead, Defendants: (i) rely on the wrong legal standards that simply do not apply, (ii) claim that this *obvious* federal case should instead be litigated in state court, (iii) claim that there is no case or controversy while simultaneously arresting and prosecuting those who violate the challenged law, (iv) baselessly claiming that Plaintiffs should have sued a whole host of additional parties, (v) raising an army of irrelevant straw-man questions that have nothing to do with this case, and (vi) selectively editing the Supreme Court's statements to claim that the Second Amendment's plain text does not even *presumptively* apply to Plaintiffs' quintessential desire to "bear arms" in public. *See* ECF #26, #27.

Although, as noted, the bar for setting aside a default is minimal, it is highly questionable whether Defendants have met it here. Thus, Plaintiffs continue to take the same position as expressed in Defendants' motions (ECF #20, 23) – not opposing an order setting aside the default, but deferring to the Court as to the appropriate resolution.

## III. PLAINTIFFS MEET THE STANDARD FOR A FINAL DEFAULT JUDGMENT.

As noted above, "before granting default judgment, 'the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought.'" *U.S. Sur. Co.*, 2024 U.S. Dist. LEXIS 79629, at *4-5 (citation omitted). In other words, due to their default, Defendants are bound by Plaintiffs' well-pleaded factual allegations, and if this Court believes that Plaintiffs' legal analysis is correct, entry of a final default judgment clearly would be within this Court's discretion.

A.  **Plaintiffs' Complaint States a Cause of Action.**

With respect to the facts, default judgment is "warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard ... being akin to that necessary to survive a motion to dismiss for failure to state a claim." *First Green Indus. A.S. v. Solar Dairy, LLC*, 2024 U.S. Dist. LEXIS 172444, at *6-7 (S.D. Fla. Sept. 24, 2024). Plaintiffs have stated a claim that is, at a bare minimum, plausible on its face.

Plaintiffs alleged a single cause of action under 42 U.S.C. § 1983 for infringement of their Second and Fourteenth Amendment rights. ECF #1. As Plaintiffs explained, they are Americans eligible to possess firearms under state and federal law, and wish to carry their firearms openly in public. Compl. ¶¶9-19; ECF #1-7 at ¶3. Plaintiff Richard Hughes ("Hughes"), for example, alleged that he visits various locations in Port St. Lucie, Florida, and that he would exercise his right to openly carry a firearm while visiting these locations, but that he does not do so because of Florida's ban on open carry. Compl. ¶¶13, 14; ECF # 1-7 at ¶¶14-16, 19-20. The Organizational Plaintiffs alleged more broadly that the enforcement of Fla. Stat. § 790.053(1) causes harm to their members and supporters by "denying their exercise of the constitutional right to openly carry firearms for self-defense." Compl. ¶11; ECF #1-6 at ¶14. And as applied to those between the ages of 18 and 20, Plaintiffs explained that GOA member McDuffie's right to "bear arms" is entirely extinguished by Florida's separate ban on concealed carrying by young adults. ECF #1-6 at ¶¶36-37.

Nevertheless, in spite of their stated desire and intent to exercise their enumerated rights to "bear arms," Plaintiffs explained that they cannot open carry as they go about their daily lives, because Fla. Stat. § 790.053(1) generally prohibits open carry and Plaintiffs wish to open carry

outside those locations and activities which are narrowly exempted under Fla. Stat. § 790.25(2). Compl. ¶¶63-68.

Finally, Defendants enforce Fla. Stat. § 790.053(1). Compl. ¶¶19-25. As Plaintiffs alleged, the SLSO Defendants are responsible for enforcing Fla. Stat. § 790.053(1) (*id.* ¶¶20, 21), and Sheriff Pearson's office threatened enforcement of the statute, posting that "[t]he law is not open carry; open carry is still illegal in Florida under most circumstances." *Id.* ¶20. As to the SAO Defendants, Plaintiffs alleged that they are tasked with prosecuting "individuals who commit crimes against the State of Florida, including violations of Fla. Stat. § 790.053(1)." *Id.* ¶¶23, 24. Indeed, Defendant State Attorney's Office's "prior open carry prosecutions led to the decision in *Norman v. State*, 215 So. 3d 18 (Fla. 2017)." *Id.* ¶24.

As Defendants are in default, these facts are admitted as true. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citation omitted) ("plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").

### B. There Is a Substantive Legal Basis for the Relief Plaintiffs Seek.

Pursuant to 42 U.S.C. § 1983, Plaintiffs seek (i) a declaration that Fla. Stat. § 790.053(1) violates the Second and Fourteenth Amendments to the United States Constitution and therefore is unconstitutional and (ii) an order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing Fla. Stat. § 790.053(1). *See* Compl. Prayer for Relief (also requesting nominal

damages[2] and an award of attorneys' fees). *See also id.* ¶105 ("Fla. Stat. § 790.053(1) violates the Second Amendment by infringing on an individual's right to 'bear arms' outside of the home.").

Plaintiffs' desired course of conduct – carrying handguns openly in public – is presumptively protected by the plain text of the Second Amendment – in fact, the text says so, in so many words, guaranteeing that "the right of the people to keep and bear arms shall not be infringed." Compl. ¶¶43-47. Indeed, being law-abiding adult American citizens, Plaintiffs belong to "the people" as a textual matter. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 31-32 (2022). Plaintiffs wish to "bear Arms," which naturally means to "wear, bear, or carry" weapons openly "upon the person." *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008); *Bruen*, 597 U.S. at 32. Specifically, Plaintiffs wish to carry handguns, which unquestionably are protected "Arms." *Heller*, 554 U.S. at 629; *Bruen*, 597 U.S. at 32. And finally, the Second Amendment draws no distinction between open and concealed carry as a textual matter, simply providing that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Therefore, under *Bruen*, Plaintiffs undeniably have stated a claim for violation of the Second Amendment, incorporated against the states via the Fourteenth Amendment and brought in federal court under 42 U.S.C. § 1983, the proper vehicle for seeking redress against state actors for enforcement of an unconstitutional law. Compl. Count I ("U.S. Const. amends. II, XIV, 42 U.S.C. § 1983 against all defendants").

In addition to facially stating a Second Amendment claim, Plaintiffs' legal position is sound on its face. As *Heller* already observed, the Second Amendment's plain text fails to distinguish

---

[2] As this Circuit acknowledged, even "in the absence of actual injury entitling the plaintiff to compensatory damages, a § 1983 plaintiff whose constitutional rights are violated by the defendant is entitled to nominal damages." *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000) (citing *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978)).

between open and concealed carry. Rather, the public originally understood *both* manners of carry to be protected, as the plain meaning of "bear" was to "wear, bear, or carry … upon the person *or in the clothing or in a pocket*, for the purpose … of being armed and ready[3] for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584 (emphasis added). And as a historical matter, the arms necessary to effectuate the Militia Clause *must have* been carried openly. Compl. ¶88. Being as the ubiquitous Founding-era musket was some *five feet long*, Defendants' claim that the Second Amendment from the start protected only the *concealed* bearing of such *unconcealable* arms (SAO Motion to Dismiss, ECF #24 at 14) cannot be taken seriously. For this reason, the *Bruen* Court identified *not one* contemporaneous restriction on the open carry of firearms. *Bruen*, 597 U.S. at 52 & n.16. Nor do Defendants in their motions to dismiss, ECF #24, #25.

Likewise, having already previewed their substantive merits arguments in their motions to dismiss, Defendants have failed to dispute the *Bruen* Court's historical understanding, making default judgment even more appropriate.[4] Indeed, Defendants' voluntary choice to proffer a quintessentially merits analysis could be treated as a sort of summary judgment briefing on the issue. And tellingly, Defendants previewed *no* historical evidence – *none* – of restrictions on open

---

[3] Plaintiff Hughes alleged that, when carrying a larger, hard-to-conceal handgun concealed in a pack, as opposed to openly carrying the firearm on his body, it increases his "time to access" the firearm "to nearly three to five seconds – or perhaps more, depending." *See* ECF #1-7 at ¶11. In contrast, Hughes stated that "carrying a firearm openly … is the quickest way to respond effectively to a deadly threat." *Id.* These allegations, taken as true, show that Florida law forces Hughes into a situation where he is not "ready for confrontation."

[4] Defendants State Attorney's Office and Bakkedahl are treated as though they are the State of Florida. *See Wooding v. State Att'y's Off.*, 2010 U.S. Dist. LEXIS 130823, at *4 (S.D. Fla. Nov. 30, 2010) ("the State Attorney's Office is an arm of the state of Florida…."); *accord Scheider v. Leeper*, 2016 U.S. Dist. LEXIS 30839, at *7 (M.D. Fla. Mar. 10, 2016) (emphasis added, collecting cases) ("In Florida, the State Attorney and the State Attorney's Office are considered an 'arm of the state,'" and a "*§ 1983 claim against the State Attorney is treated as a claim against the State of Florida*").

carry at the Founding. Moreover, as to the smattering of late-in-time carry limitations to which Defendants allude – which uniformly arose towards the end of the 19th century (nearly a century after the Founding) – they homogeneously restricted only the *concealed* carry of arms. Nor did *Bruen* ever limit its analysis to concealed carry only. Rather, the Court observed broadly that, much like how "[n]othing in the Second Amendment's text draws a home/public distinction" as to locations where one may carry, the Second Amendment "naturally encompasses public carry," whether openly or concealed. 597 U.S. at 32.

Because Plaintiffs' factual allegations are well-pleaded and taken as true, because Plaintiffs clearly have alleged a facial Second Amendment claim, and because Plaintiffs' legal analysis provides a more than sufficient basis for entry of judgment, this Court should grant Plaintiffs a final default judgment.

## CONCLUSION

For the reasons stated, the Court should grant Plaintiffs a Final Judgment After Default, including (i) declaring Fla. Stat. § 790.053(1) to be an unconstitutional infringement of Plaintiffs' Second Amendment rights, (ii) enjoining Defendants from enforcing the statute, (iii) awarding Plaintiffs nominal damages for Defendants' violation of their rights, and (iv) declaring Plaintiffs to be prevailing parties in this litigation for the purposes of a subsequent fee motion. Alternatively, to the extent the Court were to find in the interim that Defendants have established "good cause" for their default and grant Defendants' motions to vacate and set aside the entry of default, this Motion should be declared moot.

## RULE 7.1 STATEMENT

Pursuant to Local Rule 7.1(a)(3)(A), undersigned counsel hereby certifies that counsel for Plaintiffs conferred with counsel for Defendants who state as follows:

Summer Barranco, Counsel for Defendants St. Lucie County Sheriff's Office and Sheriff Pearson, oppose this motion.

Arthur Ivan Jacobs, Counsel for Defendants Thomas Bakkedahl and the State Attorney's Office stated that they "object to the relief as Defendants have filed both a Motion to Vacate/Set Aside Clerk's Default and a responsive pleading as required under the Order on Default Final Judgment Procedure (ECF # 18) and therefore, such relief is not warranted."

Dated: September 30, 2024.                    Respectfully submitted,


**KATZ & PHILLIPS, P.A.**
Attorneys for the Plaintiffs
509 W. Colonial Drive
Orlando, Florida 32804
Tel./Fax: 321.332.6864
Pleadings: pleadings@kplegalteam.com
Email: jphillips@thefirearmfirm.com

_____
JAMES D. PHILLIPS, JR., ESQUIRE
Florida Bar No.: 22846

Stephen D. Stamboulieh *
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440 (T)
stephen@sdslaw.us
Mississippi Bar No. 102784
*Admitted Pro Hac Vice

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on September 30, 2024, a copy of the foregoing document or pleading has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to: Arthur Ivan Jacobs, Esquire, Counsel for Defendants Bakkedahl and SAO, 961687 Gateway Boulevard, Suite 201-I, Fernandina Beach, FL 32034; buddy@jswflorida.com; Summer M. Barranco, Esquire, and Richard A. Giuffreda, Esquire, Counsel for Defendants Sheriff Pearson and St. Lucie County Sheriff's Office, 2455 E. Sunrise Blvd, Suite 1216, Fort Lauderdale, FL 33304; summer@purdylaw.com and richard@purdylaw.com.

JAMES D. PHILLIPS, JR., ESQUIRE
Florida Bar No.: 22846