UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO.  2:24-cv-14250-JEM

GUN OWNERS OF AMERICA, INC.,
GUN OWNERS FOUNDATION, and
RICHARD HUGHES,

      Plaintiffs,

v.

SHERIFF KEITH PEARSON, in his
official capacity as Sheriff of St. Lucie
County, the ST. LUCIE COUNTY
SHERIFF'S OFFICE, THOMAS
BAKKEDAHL, in his official capacity
As the State Attorney for the 19th Judicial
Circuit of Florida, and the STATE
ATTORNEY'S OFFICE for the 19th
Judicial Circuit of Florida,

      Defendants.
_____/

**DEFENDANT SHERIFF PEARSON'S REPLY
IN SUPPORT OF HIS MOTION TO DISMISS OR
IN THE ALTERNATIVE MOTION TO STAY**

      The Defendant, SHERIFF KEITH PEARSON, in his official capacity as the Sheriff of St. Lucie County Florida (SLCSO), by and through undersigned counsel, files this his Reply in Support of His Motion to Dismiss, in the alternative Motion to Stay, and in support thereof would state as follows:

**I. PLAINTIFFS' RESPONSE FURTHER UNDERMINES THEIR STANDING**

      Plaintiff' Response fails to sufficiently address the core arguments asserted in Defendant Pearson's Motion to Dismiss as it pertains to their failure to establish standing. That is, they fail to demonstrate, based on the allegations in their complaint, the actual controversy requirement necessary for seeking declaratory relief. (ECF 25 at pgs. 3-8). The Response, in a futile attempt to manufacture standing against an improper defendant, focuses heavily on the Facebook post of

1

Sherrif Mascara, which Plaintiffs have now made clear is the keystone upon which their already shaky claim rests. (ECF 26 at pgs. 6-7). However, a closer look at this post portrayed as a "credible threat" of prosecution to these individuals, reveals that it is a generalized bulletin regarding Florida's new gun laws posted last year, which was also posted by multiple other law enforcement agencies[1], and which amounts to nothing more than a Public Service Announcement directed to the residents of St. Lucie County.

"When challenging a law prior to its enforcement, a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 134 S. Ct. 2334, 2336, 189 L. Ed. 2d 246 (2014) (internal quotations and citations omitted). To start, none of the individual members of Gun owners of America (GOA) and Gun Owners Foundation (GOF), who brought this lawsuit, including the only named Plaintiff Mr. Huges, reside in St. Lucie County, where Sheriff Pearson has jurisdiction, a factor which severely undermines their position. A position which becomes even weaker when you consider that the Complaint also fails to include any examples of past harms attributed to SLCSO. "This failure to establish traceability for past harms—which can serve as evidence of expected future harm—substantially undermines [the plaintiffs'] standing theory." Murthy v. Missouri, 144 S. Ct. 1972, 1993, 219 L. Ed. 2d 604 (2024)

Simply put, Plaintiffs' entire theory on standing is a Facebook post so generic, that several other Sheriff's offices posted an almost identical announcement themselves, including the Sheriff of Palm Beach County, where Plaintiff Hughes resides. (Exh. A at pgs. 3-4). In an attempt to depict Sheriff Pearson as a unique and credible threat to individuals who do not reside in the county where he has jurisdiction, Plaintiffs' Response argues this post shows not only that

---

[1] See Exhibit A – examples of the same or similar Facebook posts by, Brevard County Sheriff's Office, Ocala Police, and Palm Beach County Sheriff's Office (the county where Plaintiff Hughes resides) at pgs. 1-4; additionally, a similar video message was posted by Orange County Sheriff's Office.
https://www.facebook.com/watch/?v=188390284194514
Pursuant to Johnson v. City of Atlanta, 107 F.4th 1292, 1304 (11th Cir. 2024) the incorporation-by-reference doctrine allows a court to consider documents outside the complaint so long as the documents are central to the plaintiff's claims. Since the Plaintiffs have made this Facebook post central to their claim, the Defendant Sheriff should be entitled to attach and reference these similar posts in support of his Reply.

2

Sheriff Pearson "is particularly focused on the crime of open carry" (ECF 26 at pgs. 6-7), but also that this threat is sufficiently directed to them. However, conspicuously absent from Plaintiff's Complaint and their Response, is the actual post upon which this entire theory relies, and what it says. An absence made even more noticeable considering the significance of this post to Plaintiff's claims.

A review of the post reflects that Sheriff Mascara, who generated the post, was not particularly focused on the crime of open carry as Plaintiff implies, and in fact that the post *itself* is not even focused on the crime of open carry, as most of it concerns other aspects of Florida's new gun laws.[2] (Exh. A at pgs. 5-6). Plaintiff has not only misrepresented the nature and substance of the post, which is central to their claims against Sheriff Pearson, but has also misconstrued the application of the only case they cite to in support of their position and theory on this issue.

### *a. Plaintiff's reliance on Antonyuk is misplaced*

That the Plaintiffs omitted the full Facebook post from their Complaint and response, is rather telling. An omission made even more glaring when taken in conjunction with a deeper analysis of Antonyuk v. Hochul, the only case Plaintiff can point to in support of their position as to this theory on standing. Putting aside that this decision was made by a federal court in New York and therefore in no way binding here, a closer look at Antonyuk shows that Plaintiff's heavy reliance on it is sorely misplaced. The plaintiff in Antonyuk, Mr. Mann, was a pastor in Oswego County New York, and was unable to comply with New York's new gun restrictions

---

[2] The full post states as follows and corresponds to a bulletin: There is a lot of misinformation about the new permitless carry law here in Florida. On behalf of the St. Lucie County Sheriff's Office, let us set the record straight. Here are the facts: the law is not open carry; open carry is still illegal in Florida under most circumstances; the new law does not change who can purchase a firearm, the waiting period to purchase a firearm, or where you can carry a firearm.; the criteria to carry a concealed firearm is the same to be eligible for a permit, including being a U.S. citizen who is at least 21 years of age with no felony convictions or other disqualifying conditions; when carrying a concealed firearm, you must also possess valid identification and you are required to provide it to law enforcement upon request. The new law does not change where you can carry a firearm. You may not carry a firearm anywhere that a private business or property owner has prohibited them or anywhere outlined in 790.06 of the Florida Statues, including but not limited to schools, colleges, universities, bars, courthouses, and at government meetings. Carrying a concealed firearm, let alone possessing a firearm, comes with a lot of responsibility. Do your part by taking firearms training education seriously. Learn the law; seek out experienced professional firearms training. Become proficient, because your life and that of your family may depend on it. Ensure the safe storage of your firearm and never leave your firearm unsecured in your vehicle.

which prohibited carrying firearms in sensitive locations, such as places of worship. Antonyuk v. Hochul, 639 F. Supp. 3d 232, 262 (N.D.N.Y. 2022). An important detail and distinction that Plaintiffs not surprisingly chose to ignore, is that Mr. Mann sued the Sheriff of *Oswego County,* the very county where his church was located. Id.

While that distinction is likely enough to sever any reasonable application of this case to the facts here, it is helpful to go even further. The following are additional allegations made by Mann which supported the court's determination that he had shown an injury in-fact and therefore standing against the Sheriff of Oswego County:

- The church where he was a pastor had services every Sunday, with an evening service every Wednesday, and regularly held gatherings and events.
- Church was unable to pay for security, and Mann intended to conceal carry for protection.
- In his role as pastor Mann provided counseling to homeless youth, to people in domestic violence and abuse settings, and helped with the church's recovery program and provided counseling to persons addicted to drugs; he alleges that he has carried his licensed concealed handgun when counseling such persons in the program at his church. Id.

Unlike Plaintiffs' Complaint here, without any ambiguity, and with sufficient specificity, Mr. Mann alleged that he intended on concealed carrying at the exact locations where he was prohibited from doing so, and that he intended on doing so on a weekly basis for the protection of his church, where one of his congregants was a member of law enforcement. It was these facts, taken *together with a series* of Facebook posts by the *Sheriff of the county where the church was located,* which established an injury in fact (credible threat of future enforcement), and that Oswego Sheriff's Office was the proper party to bring this challenge against. Importantly, the Facebook posts at issue in that case were as follows:

> July 20, 2022 – "Under the new law, taking a legally licensed firearm into any sensitive area – such as a ... church ... is a felony punishable by up to 1 1/3 to 4 years in prison"
>
> August 31, 2022 – "If you own a firearm please be aware of these new laws as they will effect [sic] all gun owners whether we agree with them or not." Id. at 265-266

In sum, the defendant Sheriff in Antonyuk served as the Sheriff in Oswego County where the church was located, Mr. Mann had with specificity established that he intended on violating this statute, and that there was a high probability he was to be reported by a member of his congregation, and therefore arrested by the Defendant and prosecuted. Further, the Sheriff of this

county made a very direct threat that he intended to enforce this specific law, against people like Mann, and see to it violators were punished, whether they agree with the laws or not. As a result, the court in Antonyuk found that Mann had standing to challenge this regulation, and that the defendant Sheriff was a proper defendant. Id.

To truly illustrate the stark differences between the lone case Plaintiff relies on for this Facebook post theory, and the facts here, it is important to again go through the Complaint's allegations, keeping in mind that these were the allegations made to support a lawsuit against St. Lucie County Sheriff's Office:

- Jon Legget lives in *Volusia County*, he was once arrested by *Daytona PD*. [ECF 1-6 at ¶'s 17-29].
- Mr. McDuffie, lives in *Hillsborough County* and would like to be able to open carry to protect himself when he walks dogs *in his neighborhood* (presumably in *Hillsborough* County). Id. at ¶'s 37-38
- Ms. Notargiacomo would like to open carry when she goes hiking where she lives, which is *Indian River County.* Id. at ¶'s 41-42
- Luis Valdes in a recent publication referenced by Plaintiffs in their response [ECF 26 at pg. 15], made his true motives very clear when he said that the reason for the lawsuit was due to his frustration with the GOP supermajority and their failure to support open carry, stating "Florida is the only conservative state in the county to ban open carry and so called pro-gun officials have failed to repeal this gun control." (See Exhibit B – Article published by politico). Mr. Valdes was arrested by *Miami-PD* for violating the conceal carry law. Id. at ¶'s 43.

In Antonyuk, Mr. Mann alleged he was going to conceal carry on a weekly basis to provide security for his church and community where he was a pastor. This church was located in an area under the jurisdiction of the individual he brought his claim against and included a congregant who was a law enforcement officer and who was likely to report his violations. Antonyuk 639 F. Supp. 3d 262-262 (N.D.N.Y. 2022). In contrast, none of the individuals here reside in St. Lucie County, and all but one fail to even allege they intend to go to St. Lucie County at any point in the future. That one being Mr. Hughes, who lives in *West Palm*, the county where Sheriff Bradshaw has jurisdiction. Notably Sheriff Bradshaw posted an almost identical statement/bulletin on his own Facebook page after these laws were passed. (Exh. A at pgs. 3-4). It therefore seems odd that Hughes would feel so threatened by the post of a Sheriff several counties away but apparently have no such issues with a similar post by the Sheriff of the county where he resides.

### b. Facebook post was a general PSA and not some unique threat directed to these individuals

Unlike the Sheriff in <u>Antonyuk</u>, whose post was a direct threat of prosecution aimed at individuals who lived in that county, and at the exact conduct Mr. Mann was going to engage in, (conceal carrying in a church and the punishment that followed), this Facebook was a PSA to the community of St. Lucie County, most of which had nothing to do with conceal carry. Plaintiffs attempt to paint Sheriff Pearson as an imminent threat to them because he is "particularly focused on the crime of open carry" based on this post, is disingenuous at best. Several other counties posted the same standard PSA, which were clearly directed to members of their community, for the purpose of clarifying misconceptions about the new gun law, and which likewise had nothing to do with conceal carry. In fact, the top two comments under the post were appreciative to the Sheriff for this clarification. (Exh. A at pg. 5).

### c. Another plaintiff more similarly situated to Hughes failed to establish standing in Antonyuk

Plaintiff, in relying solely on <u>Antonyuk</u> for this argument, has ironically managed to reinforce the position of the Defendants. While the credible threat of prosecution standard is forgiving, it is not non-existent. <u>Wilson v. State Bar of Ga.</u>, 132 F.3d 1422, 1428 (11th Cir. 1998). A point that was notably highlighted in <u>Antonyuk</u>, wherein the court found that another plaintiff, Leman, who along with Mann attempted to sue the Sheriff of Oswego County, could not establish standing. This was because he failed to allege, that he intends to conceal carry in a particular place where it is prohibited in the immediate future, or that based on his prior experience there is a reasonable chance he will do so in the next 90 days. <u>Antonyuk</u> 639 F. Supp. 3d 232, 267 (N.D.N.Y. 2022).

Like Leman, the Plaintiffs' theory of injury-in-fact based on these allegations should likewise be rejected as impermissibly speculative.

### d. Hughes fails to address the speculative and attenuated nature of his allegations

6

Here, the only individual who even comes close to meeting the requisite standard to show an injury in fact is Hughes[3]. In their Response Plaintiffs reiterate the allegation that he likes to visit an eco-center in Port St. Lucie once a month, because there are not many dog-friendly parks where he lives. [ECF 1-7 at ¶'s 16] However, as is the case with Plaintiffs' other claims, this allegation quickly falls apart with further examination, as a quick internet search reveals that there are several dog parks in West Palm where Plaintiff lives. (See Exhibit C - information about dog parks and dog friendly activities located in West Palm; see also Johnson supra, court should consider this document since this issue is central to Plaintiffs' claim). Plaintiff Hughes cannot manufacture standing by alleging ambiguous concerns regarding a hypothetical future harm, that is certainly not impending, which is based on the false premise that he has no choice but to open carry at an eco-center in St. Lucie County because of his lack of access to dog parks closer to where he lives. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 401–02, (2013). Otherwise, Plaintiff would be creating a lower standard for article III standing.

Plaintiffs' response also regurgitates Hughes' desire to go to unnamed restaurants/stores, and a gun show[4] located in St. Lucie County, which he argues is likewise sufficient to establish standing. In his Motion to Dismiss, the Defendant Sheriff correctly pointed out that most of these places would likely be on private property and therefore areas where Hughes would still likely be prohibited from open carrying regardless of the outcome of this lawsuit, as the owners of these properties could still ask Hughes to leave if he was open carrying and if they did not allow it. [ECF 25 at pg. 6]. Plaintiff's response does nothing to address this point, and instead contends that the Defendant's argument somehow fails because F.S. 790.25 broadly prohibits a person from open carrying, and that these places are not included in any applicable exemption. [ECF 26 at pgs. 7-8]. Plaintiffs have misunderstood Defendant's point here entirely. These unnamed locations, which are presumably private property[5], may have their own rules and restrictions as it

---

[3] Plaintiffs' response all but abandons any attempt to address these similar concerns on standing as to the other members on whose behalf this lawsuit was brought, as there is no similar argument made on behalf of Legget, McDuffie, Notargiacomo, or Valdes.

[4] Plaintiff's concern that Florida's conceal carry law prevents him from defending himself has nothing to do with how the law prevents him from open carrying at these gun shows, since he admits, he would have to keep the gun unloaded and secured with a plastic tie, making such a concern moot here. [ECF 26 at pg. 8].

[5] The Defendant has no choice but to presume as Plaintiff fails to identify even one of these purported locations by name or with any specificity.

relates to public carrying a firearm on their premises, as would be their right. In fact, many such places are restricted from allowing firearms altogether pursuant to F.S. 790.06(12)(a)(12).

In other words, Plaintiffs' theory relies on the possibility that Hughes will go to one of these unidentified private establishments/locations at some point in the future, that these places/locations will allow him to openly carry and have no policy against it, that assuming they will allow open carry Hughes will nonetheless be reported by a fellow patron or identified by a SLCSO deputy for open carrying, and that as a result he will be arrested by SLCSO and prosecuted. This highly attenuated chain of vague and completely hypothetical possibilities does not come close to satisfying the requirement that the threatened injury must be certainly impending. Clapper 568 U.S. 398, 410, (2013). This is a point Plaintiffs fail to address in any meaningful way as part of their response, likely because they cannot. Plaintiffs' reliance in Antonyuk is misplaced, their argument fails, and they therefore lack Article III standing as is required.

### e. Lawsuit seeks improper advisory opinion to further political agenda

As Plaintiffs' response fails to adequately address the deficiencies as to standing, and in some respects served to further undermine the already shaky ground upon which their claims rest, it is clear they are seeking nothing more than an advisory opinion which would only serve to advance their political agenda, which is improper and should not be permitted. See Trump v. Clinton, 653 F. Supp. 3d 1198, 1215 (S.D. Fla. 2023), appeal dismissed, No. 23-10536-J, 2023 WL 3477967 (11th Cir. Apr. 6, 2023) ("This suit was filed for equally improper purposes—to harass and punish, for fundraising, and to advance a political agenda").

As Mr. Valdes made clear in his statement to the press about this case, these individuals are not so much concerned with SLCSO and any credible threat it presents to them, as much as they are with the state legislature and the GOP's failure to pass open carry laws. (Exh. B at pg. 6) Since this lawsuit appears to be politically motivated, it seems only appropriate that the Court consider the potential ramifications of issuing such an advisory opinion, which would impact not only these Defendants, but other parties not joined, and the *actual* residents of St. Lucie County, two of whom were appreciative of the Sheriff's PSA and clarification. (Exh. A at pg. 5). The practical challenges of such a decision or "parade of horribles" as Plaintiffs so artfully put it, is

the reality that the actual citizens of St. Lucie County would be confronted with if the Court were to issue such an advisory opinion and is worthy of the Court's consideration.

## II. PLAINTIFF FAILS TO ADDRESS THE FAILURE TO JOIN INDISPENSABLE PARITES

Plaintiff's response to Defendant's argument on their failure to join several indispensable parties is nothing more than an attempt to obscure issues which are relatively straightforward and simple. An absent party is considered a necessary party under Rule 19 "when (1) in that person's absence, the court cannot accord complete relief among existing parties, or (2) where the absent party claims an interest relating to the action, disposing of the action without the absent party may as a practical matter impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Off. of the Att'y Gen. v. Smartbiz Telecom LLC, 688 F. Supp. 3d 1230, 1235 (S.D. Fla. 2023). The Plaintiffs have failed to join several parties[6] without whose inclusion this Court cannot grant the complete relief Plaintiffs seek, and whose absence will no doubt create a substantial risk of inconsistent obligations.

In response, Plaintiffs argue that because Sheriff Pearson is the chief law enforcement officer within St. Lucie County, it would not be necessary that the state be joined. In support of this they insert authority which delineates the standard for bringing a *Monell* claim, which is that a suit against an individual in his or her official capacity is no different than a suit against the office of the official, and which explains that the SAO is an arm of the state for purposes of immunity. [ECF 26 at pg. 14]. What connection those issues have to whether the State of Florida is an indispensable party Plaintiffs failed to join is never made clear in their response. Certainly, it has nothing to do with whether the other parties identified in Defendant's Motion are indispensable to this action.

---

[6] Palm Beach County Sheriff's Office (where Hughes lives); PBSO made a post nearly identical to SLCSO's on their own Facebook as noted above; Volusia County Sheriff's Office (where Mr. Legget lives); Hillsborough County Sheriff's Office (where Mr. McDuffie lives); Dayona Beach PD (arrested Legget); Miami PD (arrested Valdes) Floria Highway Patrol (who have a station located near the turnpike service plaza where Hughes likes to stop); Florida Department of Law Enforcement, Florida Fish and Wildlife Conservation Commission (who would have jurisdiction over the eco-center where Plaintiff likes to visit); State of Florida/Attorney General

The response also argues that Plaintiffs should not have to sue every jurisdiction where they might be harmed [ECF 26 at pg. 16], however, that is hardly what the Motion argues. To be clear, the Defendant is not asserting that Plaintiffs should sue every jurisdiction where they *might* be harmed, he is asserting that the Plaintiffs should sue the jurisdiction where they will *likely* be harmed, including the agencies who have jurisdiction over where they live and will engage in this conduct. This seems even more appropriate considering one of these parties Plaintiff failed to include is Sheriff Bradshaw, the chief law enforcement officer in Palm Beach County where Hughes lives, who posted an almost identical announcement/bulletin to his own Facebook. The Defendants are not asking whether the Plaintiffs have named the most suitable defendant, although there is certainly some question as to that, they are asking whether this Complaint should move forward without these additional parties who are indispensable.

Additionally, should the Court allow this case to move forward without these parties' inclusion, and before the related State Cases of *McDaniels v. State of Florida*, 1D23-0533 (Fla. 1st DCA) and *Guzman v. State of Florida*, 6D23-2829 (Fla. 6th DCA), and the federal case of NRA v. FDLE, 72 F.4th 1346, 1347 (11th Cir.) have all resolved, it would potentially create an inconsistent obligation for the Defendant Sheriff. "Inconsistent obligations arise only when a party cannot simultaneously comply with the orders of different courts." Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1040 (11th Cir. 2014) (internal citations and quotations omitted). "Rule 19 was designed to protect not only the interests of the parties, but also the interests of the public in avoiding repeated lawsuits on the same essential subject matter." Cuhaci v. Echemendia, 2021 WL 4973722, at *6 (S.D. Fla. 2021) (internal citations and quotations omitted). Without the State's inclusion, who have taken the position that the law is constitutional is the above referenced cases, the Defendants may be forced to decide between whether to comply with a decision by the 11th Circuit, and/or the Florida Supreme Court which may uphold this law, and the decision of this Court. The state and attorney general will likely expect SLCSO and SAO as an arm of the state, to comply with a decision of the Florida Supreme Court and enforce this law, should it be upheld, thereby creating an inconsistent obligation. Additionally, Plaintiffs are likely to sue these absent parties based on the same subject matter in the future. Defendant's Motion asking that this case be dismissed until these indispensable parties are joined should be granted.

**I HEREBY CERTIFY** that a copy of the foregoing has been electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: **STEPHEN D. STAMBOULIEH, ESQUIRE,** Co-Counsel for Plaintiffs, P.O. Box 428, Olive Branch, MS 38654  [stephen@sdslaw.us]; **JAMES D. PHILLIPS, JR., ESQUIRE**, Co-Counsel for Plaintiffs, 509 W. Colonial Drive, Orlando, FL 32804 [jphillips@thefirearmfirm.com]; and **ARTHUR IVAN JACOBS, ESQUIRE,** Counsel for Defendants Bakkedahl and SAO, 961687 Gateway Boulevard, Suite 201-I, Fernandina Beach, FL 32034 [buddy@jswflorida.com] this October 7, 2024.

         _s/Andrew W. Jolly_
         ANDREW W. JOLLY, ESQUIRE
         Fla. Bar No. 1032793
         PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA, P.A.
         2455 E. Sunrise Boulevard, Suite 1216
         Fort Lauderdale, Florida 33304
         Telephone:(954) 462-3200
         e-mail: Andrew@purdylaw.com
             Cecilia@purdylaw.com
         Attorney for _Defendants Sheriff and St. Lucie County Sheriff's Office_
         Trial Counsel