**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**
Civil Action No. 2:24-cv-14250-JEM

GUN OWNERS OF AMERICA, INC., et al.

     Plaintiffs,

v.

SHERIFF RICHARD R. DEL TORO, in his official
capacity as Sheriff of St. Lucie County, et al.,

     Defendants.

_____

**PLAINTIFFS' REPLY TO DEFENDANTS' JOINT RESPONSE
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I.      **This Court Has Authority to Grant the Relief Plaintiffs Seek.**

Defendants first muddle declaratory with injunctive relief, lumping the statutory and the equitable together as "the relief sought," and arguing that the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 2025 U.S. LEXIS 2501 (June 27, 2025), prevents this Court from so much as *declaring* that Fla. Stat. § 790.053(1) violates the Second Amendment.  *See* Defendants' Joint Response to Plaintiffs' Motion for Summary Judgment ("Resp.") at 2 (opposing "a sweeping and broad declaration … that an entire state law is unconstitutional"); at 4 (claiming a declaratory judgment would be "judicial overreach").  *See Brenner v. Scott*, 999 F. Supp. 2d 1278, 1286 (N.D. Fla. 2014) ("a federal court ha[s] … the duty – to strike down an unconstitutional statute….").  But no language in *CASA* prevents a court from "say[ing] what the law is" (*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)), and the Declaratory Judgment Act, 28 U.S.C. § 2201, expressly allows a court to "declare the rights and other legal relations of any interested party...."

Nor do Defendants unpack their apparent belief that *CASA* eliminated Plaintiffs' hornbook "facial challenge," such that this Court now may only declare Florida law unconstitutional *as applied* to particular parties and peculiar activities.  To the contrary, the plaintiffs in *Bruen* sued the Superintendent of New York State Police and a local licensing officer, yet the Court declared that "New York's proper-cause requirement violates the Fourteenth Amendment...."  *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 71 (2022).  *CASA* does not prevent this Court from likewise declaring that "[Fla. Stat. § 790.053(1)] violates the Fourteenth Amendment...."  Indeed, that is precisely what Plaintiffs have asked the Court to do.  Compl. at 1 ("Plaintiffs seek a declaration that Fla. Stat. § 790.053(1) is unconstitutional"); *see also* at 39.

Defendants continue to claim that Plaintiffs must sue every official in every jurisdiction in the State of Florida in order to obtain statewide relief.  Resp. at 3 (maligning "relief which would

1

apply throughout the state," and recommending a multitude of further actions "against the agencies who have jurisdiction over [other] areas … or against the State of Florida itself"). But it is beyond dispute that a "§ 1983 claim against the State Attorney is treated as a claim against the State of Florida." *Scheider v. Leeper*, 2016 U.S. Dist. LEXIS 30839, at *7 (M.D. Fla. Mar. 10, 2016) (collecting cases); *see also* ECF #26 at 5, 14-15. *CASA* did not disturb that basic principle.

Finally, Defendants note that Plaintiffs seek injunctive relief not only for Hughes, but also for the "members and supporters of GOA and GOF," labeling this the sort of "universal injunction" that *CASA* rejected. Resp. at 3 (claiming relief sought for "hundreds if not thousands of non-party individuals," and asserting that "district courts lack the authority to prohibit enforcement of a law … against *anyone* who is not a named party to the lawsuit"). Resp. at 2. But *CASA* never overruled the doctrine of representational standing established in *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977). *See* Compl. ¶11. The Supreme Court reaffirmed that doctrine as recently as 2023, in *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181 (2023). Defendants assert that the members and supporters of Plaintiffs GOA and GOF are "non-parties" (Resp. at 3), ignoring that "[w]here … an organization has identified members and represents them in good faith," then "neither the claim asserted nor the relief requested requires the participation of individual members…." 600 U.S. at 201, 199. *CASA* did not disturb this settled law. *See* 2025 U.S. LEXIS 2501, at *20 (positively referencing a 1676 case where "lead miners … named four of their members to defend the suit in a representative capacity").

Undaunted, Defendants focus on *CASA*'s statement that, "'[a]s a general rule, an injunction' could not bind one who was not a 'party to the cause'" (2025 U.S. LEXIS 2501, at *16), inferring that each of Plaintiffs' members and supporters must be "named" in order for GOA and GOF to proceed on their behalf. Resp. at 2. But again, *CASA* did not silently overrule the law of

representational standing, because the "Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*." *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 18 (2000).[1] Indeed, the Court in *Students for Fair Admissions* never required each member be named,[2] and this Circuit does not require an organizational plaintiff "to identify by name the members on whose behalf it was suing." *Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 773 (11th Cir. 2024) (citing *Doe v. Stincer*, 175 F.3d 879, 884 (11th Cir. 1999)).[3]   Had the Court intended a 180-degree pivot on this recently decided issue, surely the Court would have said so.

## II.   Plaintiffs Have Standing.

Claiming that Plaintiffs lack standing, Defendants make several arguments, largely mirroring their motions to dismiss (ECF ##24, 25).  None holds water.  First, Defendants claim that Hughes' asserted injury is based on a "highly attenuated chain of completely hypothetical possibilities...."  Resp. at 7.  Defendants claim that Hughes "would have to choose to openly carry a 'full size' handgun … in a county where he does not live," *id.* at 6, ignoring that Hughes expressed the intention *to do just that*.  ECF #1-7 at ¶¶14, 15-21.  Next, Defendants claim that Hughes' open carry would be "on some unknown date in the future," ignoring that Hughes visits St. Lucie County "at least once a month" and gave *specific dates* of his frequent gun show attendance.  ECF #1-7 at ¶¶ 16, 19.  In other words, Hughes stated his "intent to take the action

---

[1] Providing further evidence that *CASA* did not overrule the settled doctrine of representational standing, Justice Thomas's concurrence in *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024), recommended that, "[i]n an appropriate case, we should explain just how the Constitution permits associational standing." *Id.* at 399 (nevertheless recognizing that "the Court consistently applies the doctrine").  But that was the opinion of just one justice, not the Court.

[2] In addition to Hughes, Plaintiffs *did name* Legget, McDuffie, Notargiacomo, and Valdes as GOA members, explaining how each suffers harm due to Florida's ban on open carry.  *See* ECF #1-6 at ¶¶17-35 (Legget), ¶¶36-39 (McDuffie), ¶¶40-42 (Notargiacomo), ¶43 (Valdes).

[3] Other courts are in accord.  *Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *Speech First, Inc. v. Shrum*, 92 F.4th 947, 949-50 (10th Cir. 2024).

that [he] asserts is prohibited[,]" showing that he is "'able and ready' to do so" and demonstrating "a concrete injury." *Am. All. for Equal Rights*, 103 F.4th at 772.  Next, Defendants (i) question whether their officers even would be present, (ii) theorize that they may choose *not* to arrest and prosecute a flagrant lawbreaker, and (iii) speculate that it is more likely another agency would be involved.  Resp. at 6-7 & n.2.  But Defendants ignore that they *have repeatedly* arrested and prosecuted Floridians for this very crime.  *See id.* at 9; *see also Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 272 (N.D.N.Y. 2022) (rejecting a nearly identical attempt at finger-pointing).  But when seeking "a declaration of the unconstitutionality of a state statute or to enjoin the enforcement of the statute," all that is required is that the "defendant … has *some connection* with the enforcement of the act."  *Diaz v. Cobb*, 2007 U.S. Dist. LEXIS 110640, at *3 (S.D. Fla. May 4, 2007).

Defendants also downplay their explicit warning that "open carry is still illegal in Florida," characterizing this as a mere "public service announcement," and demurring that *another* sheriff posted a *similar* warning.  Resp. at 8-9.  *But see Antonyuk*, 639 F. Supp. 3d at 263-64 (finding a credible threat of enforcement based on a Sheriff's Facebook post).  Again, each of these arguments already has been raised – and rebutted.  *See* ECF #26 at 4-10.

Next, Defendants seek to whitewash their voluminous arrests and prosecutions of law-abiding persons for this very crime, Resp. at 9, yet in so doing provide confirmatory evidence (i) that SLCO has made several open carry arrests, (ii) that the State Attorney's Office has brought dozens of prosecutions, (iii) that many arrests were for open carry with *no other crime*, and (iv) that most remaining arrests were made at traffic stops – *i.e.*, "the most frequent reason for contact with police."[4]  If this *extensive* history of this *specific* jurisdiction and this *specific* law enforcement

---

[4] https://bjs.ojp.gov/content/pub/pdf/cpp08.pdf.

agency arresting and prosecuting for this *specific* crime against otherwise-*law-abiding* individuals does not constitute a credible threat of enforcement to Plaintiffs, it is hard to see what would.

Defendants reference a recent Eleventh Circuit decision in *Baughcum v. Jackson*, 92 F.4th 1024 (11th Cir. 2024), asserting without analysis that it demonstrates Plaintiffs lack of standing. Resp. at 12. But the *Baughcum* court found no credible threat of enforcement because "Georgia law prohibits officers from detaining people solely to investigate whether they are lawful weapons carriers," and therefore "the plaintiffs would need to be doing *something else* unlawful" to be harassed. 92 F.4th at 1034-35 (presuming that the police *would not violate state law*). No such protective Florida statute exists here. Rather, Fla. Stat. § 790.053(1) expressly prohibits open carry, and Defendants admit that they have enforced it repeatedly (Resp. at 9).[5]

Next, without citation, Defendants claim that "Plaintiffs are asking that the Court declare they can open carry in areas all over Florida which are policed and overseen by other government entities … who would not be bound by an injunction...." Resp. 10. On the contrary, Plaintiffs simply asked the Court to declare Fla. Stat. § 790.053(1) unconstitutional. Compl. at 1, 39. And Plaintiffs asked only that Defendants be enjoined. *Id.* To be sure, Defendant Bakkedahl represents the State, and any relief against him would bind the State – including other State Attorneys. And Defendants are wrong that "every other … state attorney's office[] … would be free to … prosecute … even if the Court grants the narrow declaratory and injunctive relief which is permitted...." Resp. at 11. Plaintiffs most certainly have *not* asked the Court to bind "every law enforcement agency in the state." Resp. at 10. That strawman is entirely a figment of Defendants' imagination.

---

[5] In fact, there is an entire YouTube channel devoted to one Floridian's repeated detention and arrest by police for open carrying *lawfully* while fishing. *See* https://www.youtube.com/@TheArmedFisherman.

Finally addressing the elephant in the room, Defendants dispute (Resp. at 11) the idea that a "§ 1983 claim against the State Attorney is treated as a claim against the State of Florida." *Scheider v. Leeper*, 2016 U.S. Dist. LEXIS 30839, at *7 (M.D. Fla. Mar. 10, 2016) (collecting cases). Minimizing *Scheider* as only a "single … case" from one district court, Defendants claim that its stated principle applies only "for purposes of applying immunity," and does not mean that any remedy "would bind and impact every other … state attorney's office...." Resp. at 11-12. Conspicuously, Defendants neither explain their curious theory nor cite any authority in support. To the contrary, the Supreme Court has been quite clear that "[s]uits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, for over a century, it has been "'well settled that a suit against the officers of a State, to compel them to do the acts which constitute a performance by it of its contracts, is, in effect, a suit against the State itself.'" *Ex parte Young*, 209 U.S. 123, 184 (1908); *see also id.* at 185 ("the things required by the decrees to be done and performed by [state officials], are the very things, which when done and performed, constitute a performance of the alleged contract by the State," and "[a] judgment against … official representatives … commanding them to perform official functions on behalf of the State … is … a judicial proceeding against the State itself."). As the Court has explained, "the interests in 'end[ing] a continuing violation of federal law' … outweigh the interests in state sovereignty and justify an award under § 1983 of an injunction that operates against the State's officers or even directly against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 89-90 (1989). The Eleventh Circuit echoes these principles, explaining that, "in 'an official-capacity claim, the relief sought is [against] … the sovereign itself,'" and the remedy is that "both the current officeholder and any future officeholder will be barred from carrying out whatever policy is at issue." *Attwood v. Clemons*,

818 F. App'x 863, 871 (11th Cir. 2020).  Likewise, as another judge of this Court recently noted, "[a] district court may bind nonparties 'who are in active concert' with a defendant" including "those identified with them in interest." *Fla. Immigrant Coal. v. Uthmeier*, 2025 U.S. Dist. LEXIS 94451, at *55, 51 (S.D. Fla. Apr. 29, 2025) ("[t]here is clearly a partnership between Florida prosecutors and Florida law enforcement," and between "local law enforcement … [and] the Attorney General…." *Id.* at *57.  Thus, a "preliminary injunction [would] properly include[] district attorneys … [when] the suit was a facial challenge to a state criminal statute…." *Id.*[6]

### III.    Florida's Open Carry Ban Violates the Second Amendment.

Defendants dispute that Plaintiffs can even make the minimal threshold "show[ing] that the Second Amendment's plain text covers their proposed conduct – openly carrying firearms in public."  Resp. at 13.  Thus, Defendants claim, Plaintiffs are not entitled even to *presumptive* Second Amendment protection, which would shift the burden to Defendants to justify their restriction.  *Id.*  Rather, as Defendants see it, because Florida allows people to "bear arms*" in some manner – i.e.*, concealed carry – the State can prohibit people from "bear[ing] arms" openly.  *Id.* at 14.  As Defendants put it, had the framers intended to protect open carry, they should have said so.  *Id.*  But by that logic, Defendants could justify a ban on Qurans, because the Bible may still be read.  After all, the First Amendment's plain text does not protect the right to any "particular" (Resp. at 14) exercise of religion, and had the framers wished to prevent Congress from enacting a "law respecting an establishment of [the Islamic] religion," then they should have said so.

---

[6] Defendants quip that "Plaintiffs should have sued the state of Florida," ignoring that this is impossible, because "Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, and the State of Florida has not waived sovereign immunity or consented to suit with respect to such actions."  *Driessen v. Univ. of Miami Sch. of Law Children & Youth Law Clinic*, 835 F. App'x 489, 492 (11th Cir. 2020).

Unsurprisingly, the Supreme Court already has rejected Defendants' spurious argument, explaining that, historically, the term "to bear" meant to "wear, bear, or carry … upon the person *or* in the clothing or in a pocket." *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008) (emphasis added). In other words, the "plain text" presumptively supports both open and concealed carry. Indeed, the prefatory clause confirms that open carry is at least *presumptively* protected, guaranteeing a "well-regulated Militia" which, at the Founding, openly carried firearms nearly *five feet* in length. *Rahimi* was similarly unequivocal, explaining that, "when the Government regulates *arms-bearing conduct* … it bears the burden to 'justify its regulation.'" *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (emphasis added). If the open carry of firearms does not constitute "arms-bearing conduct," it is hard to see what would.[7]

Finally attempting to show historical analogues of open carry bans, Defendants fall flat. First, they seek to water down the hurdle they must overcome, asserting that they need not show "distinctly similar" historical gun laws, but rather may engage in "'analogical reasoning' to demonstrate" that Florida's law is "analogous enough." Resp. at 15-16 (citing *Bruen*). Not so. *Bruen* instructed that, "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is" unconstitutional. 597 U.S. at 26. Any purported "societal problem" that Florida's law seeks to address is nothing new, and yet the Founders never banned open carry in response. But even if some sort of loosened analogical

---

[7] Defendants mischaracterize *Bruen*, which identified a Reconstruction-era pattern wherein states would "eliminate one kind of public carry – concealed carry – so long as they left open the option to carry openly." Resp. at 13, 18 (misquoting *Bruen* at 59). Defendants reimagine this to mean that states may eliminate *either* concealed or open carry so long as they leave the *other* option open. *Id.* at 13. Defendants do not engage with Plaintiffs' criticism of their logical fallacy. *See* ECF #27 at 12. Nor do Defendants explain how a ban on open carry would not undermine the Second Amendment's prefatory clause – protection of the militia and its ubiquitous long guns.

reasoning *were* appropriate here (it is not), Defendants still failed to muster a relevant tradition. As the Eleventh Circuit recently held, "the Founding era is the primary period against which we compare the Florida law" because "[t]he Second Amendment was ratified, and its meaning fixed, in 1791." *NRA v. Bondi*, 133 F.4th 1108, 1115-16 (11th Cir. 2025). Ignoring that principle, Defendants proffer only *two* Founding-era enactments – *one* state and *one* city. Resp. at 16-17 (1794 VA; 1809 Gloucester, MA). But *Bruen* "doubt[ed] that just *three* … regulations could suffice to show a tradition of public-carry regulation." 597 U.S. at 46 (emphasis added).[8]

Defendants' remaining 19th-century analogues necessarily fail, as there is no "well-established and representative" Founding-era tradition for them to "confirm." *Bruen*, 597 U.S. at 30, 37. And aside from their temporal distance from the Founding, most regulated only certain *types* of weapons (pistols, knives) and did not ban the open carry generally. *See* Resp. at 16-17 (1879 TN; 1837 GA (duplicated); 1821 TN). At least one expressly *allowed* the open carry of certain pistols. *See id.* (1879 TN). Another allowed open carry upon payment of a surety. *See id.* (1856-57 VA). Those that purported to ban the carrying of *all* weapons were unconstitutional on passage and cannot serve as analogues. *See id.* (1901 KS; 1858 WI; 1857 DC); *cf. Bruen*, 597 U.S. at 53 And Defendants' remaining analogues either were colonial (1686 NJ) or territorial (1889 AZ; 1876 WY; 1853 OR) and therefore "deserve little weight." *Id*. 597 U.S. at 69.

Unsurprisingly, Defendants ignore the robust *Founding*-era tradition showing that open carry was the norm. As early as 1637, a Massachusetts Bay statute *required* adults to "come to the publike assemblies with their muskets…." https://tinyurl.com/23dt84rn. *See also* Virginia (1642)

---

[8] Nor are Defendants' regulations even "relevantly similar" to Florida's broad ban on open carry. *Bruen* already dispensed with Virginia's "going armed" statute, which regulated the *brandishing* of arms "in Terror of the People" and "require[d] something more than merely *carrying* a firearm in public." 597 U.S. at 49 n.14, 50. The same is true for the Gloucester ordinance, which required as an element "annoyance and terror." Resp. at 17.

(requiring men bring "to church on Sondays one fixed and serviceable [long] gun"); Connecticut 1643 (same); Massachusetts 1706 (same); South Carolina 1743 (same).[9]  Such statutes continued through the Founding era.  *See* Georgia 1770 (requiring men to carry "a gun, or a pair of pistols" *into the pew* at church).  https://tinyurl.com/5bze6caj. The colonists who gathered on the town greens at Lexington and Concord were not strangers to open carry.[10]

Defendants end with a series of generalizations from several cases, and one statement from an out-of-state *grand jury*.  Resp. at 18-20.  None forecloses Plaintiffs' challenge.  First, the Court's recognition that there is no right to carry "in any manner whatsoever" contemplates historical prohibitions on the *criminal brandishing* of arms, evidenced by the Court's repeated discussion of historical laws banning just that.  *See Heller, 554 U.S. at 623; Bruen*, 597 U.S. at 50.  Second, Defendants' state cases (Resp. 19-20) are inapposite.  *State v. Huntley*, 25 N.C. 418, 420 (1843) dealt with "the offence of riding or going about armed with unusual and dangerous weapons, to the terror of the people" – not peaceful open carry.  And *State v. Reid*, 1 Ala. 612 (1840) **_says the opposite_** of what Defendants claim, dealing with "the evil practice of carrying weapons secretly" and opining that "the Legislature cannot inhibit the citizen from bearing arms openly…."  *Id*. at 614, 619.  And third, Defendants' vague appeal to 1879 "attitude[s]" (Resp. at 20) derived from a newspaper cannot "illuminate the scope of the right" at the Founding.  *Bruen*, 597 U.S. at 34.

This Court should grant Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,

---

[9]  https://tinyurl.com/534p29hk (VA); https://tinyurl.com/msyjj3t3 (CT); https://tinyurl.com/yexwn523 (MA); https://tinyurl.com/yfur7fe7 (SC).

[10]  Although Defendants present a variety of purported historical records, they – unlike Plaintiffs – have failed to provide original source documents for any of them.  Rather, they simply copy and paste from an academic paper written by anti-gun group Everytown for Gun Safety. Resp. at 16-18 (citing ECF #56-2).  That hardly meets standard of "party presentation" – a "historical record compiled by the parties" – established in *Bruen*.  *See Bruen*, 597 U.S. at 25 n.6.



Attorneys for the Plaintiffs
509 W. Colonial Drive
Orlando, Florida 32804
Tel./Fax: 321.332.6864
Pleadings: pleadings@kplegalteam.com
Email: jphillips@thefirearmfirm.com

*/s/ James D. Phillips, Jr.*
**JAMES D. PHILLIPS, JR., ESQUIRE**
Florida Bar No.: 22846


Stephen D. Stamboulieh*
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440 (T)
stephen@sdslaw.us
Mississippi Bar No. 102784
*Admitted Pro Hac Vice*

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on July 15, 2025, a copy of the foregoing document or pleading has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to: Arthur Ivan Jacobs, Esquire, Counsel for Defendants Bakkedahl and SAO, 961687 Gateway Boulevard, Suite 201-I, Fernandina Beach, FL 32034; buddy@jswflorida.com; Summer M. Barranco, Esquire, Andrew Jolly, Esq., and Richard A. Giuffreda, Esquire, Counsel for Defendants Sheriff Del Toro and St. Lucie County Sheriff's Office, 2455 E. Sunrise Blvd, Suite 1216, Fort Lauderdale, FL 33304; summer@purdylaw.com, andrew@purdylaw.com, richard@purdylaw.com.


*/s/ James D. Phillips, Jr.*
**JAMES D. PHILLIPS, JR., ESQUIRE**
Florida Bar No.: 22846