UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 2:24-cv-14250-JEM

GUN OWNERS OF AMERICA, INC.,
GUN OWNERS FOUNDATION, and
RICHARD HUGHES,

      Plaintiffs,

v.

SHERIFF KEITH PEARSON, in his
official capacity as Sheriff of St. Lucie
County, the ST. LUCIE COUNTY
SHERIFF'S OFFICE, THOMAS
BAKKEDAHL, in his official capacity
As the State Attorney for the 19th Judicial
Circuit of Florida, and the STATE
ATTORNEY'S OFFICE for the 19th
Judicial Circuit of Florida,

      Defendants.
_____/

**DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

      The Defendants, SHERIFF RICHARD DEL TORO, in his official capacity as the Sheriff of St. Lucie County Florida, and THOMAS R. BAKKEDAHL in his official capacity as State attorney for the Nineteenth Judicial Circuit of Florida, and on behalf of the STATE ATTORNEY'S OFFICE for the 19th Judicial Circuit of Florida, pursuant to Local Rule 56.1(a) file this their Statement of Material Facts in support of their Motion for Summary Judgment as follows:

1

1. The Plaintiffs in this lawsuit are Richard Hughes, and two public interest organizations that collectively represent thousands of similarly situated members and supporters. [ECF 51 at 3].

2. Plaintiffs are suing the St. Lucie County Sheriff's Office (SLCSO) and the State Attorney's Office (SAO) for the 19th Judicial, and are seeking that this Court declare Florida's open carry law, or F.S. § 790.053(1) to be unconstitutional and that these Defendants be enjoined from enforcing this statute. [ECF 1 at pg. 39].

3. Here, Richard Hughes the only named Plaintiff, resides in Palm Beach County, not St. Lucie County. [ECF 1-7 ¶ 15].

4. He has chosen to sue St. Lucie County Sheriff's Office based in part on a Facebook bulletin which was posted after Florida passed gun reform, and which was a public service announcement advising the St. Lucie County community of the changes which were to take effect, and what rules were still in place to avoid confusion. [ECF 1-7¶ 21; ECF 57 at pgs. 8-9].

5. The post read as follows: "There is a lot of misinformation about the new permitless carry law here in Florida. On behalf of the St. Lucie County Sheriff's Office, let us set the record straight. Here are the facts: the law is not open carry; open carry is still illegal in Florida under most circumstances; the new law does not change who can purchase a firearm, the waiting period to purchase a firearm, or where you can carry a firearm.; the criteria to carry a concealed firearm is the same to be eligible for a permit, including being a U.S. citizen who is at least 21 years of age with no felony convictions or other disqualifying conditions; when carrying a concealed firearm, you must also possess valid identification and you are required to provide it to law enforcement upon request. The new law does not change where you can carry a firearm. You may not carry a firearm anywhere that a private business or property owner has prohibited them

or anywhere outlined in 790.06 of the Florida Statues, including but not limited to schools, colleges, universities, bars, courthouses, and at government meetings. Carrying a concealed firearm, let alone possessing a firearm, comes with a lot of responsibility. Do your part by taking firearms training education seriously. Learn the law; seek out experienced professional firearms training. Become proficient, because your life and that of your family may depend on it. Ensure the safe storage of your firearm and never leave your firearm unsecured in your vehicle." [ECF 57 at pgs. 8-9].

6.  This only reference to F.S. § 790.053(1) in that entire message is "the law is not open carry; open carry is still illegal in Florida under most circumstances." <u>Id</u>.

7.  Mr. Hughes found this message to be so threatening as someone who would like to open carry, that he felt the need to file the instant action against SLCSO and the SAO for the 19th Judicial Circuit. [ECF 1-7 ¶ 21; ECF 51 at pg. 7].

8.  However, the Sheriff of Palm Beach, where Mr. Hughes resides and would also like to open carry posted an identical message on his Facebook, and yet Mr. Hughes did feel threatened enough to include Palm Beach County Sheriff's Office as a party, nor the State Attorney's Office for the 15th Judicial Circuit. [ECF 32-1 at pgs. 3-4].

10. Mr. Hughes has stated that he likes to go to St. Lucie County for shopping, events, restaurants, etc., where he would like to be able to open carry, but provides no detail as to what specific places he is referring to, and where they are located. [ECF 1-7 ¶ 15].

11. As a basis for suing the St. Lucie County Sheriff's Office and the State Attorney's Office for the 19th Judicial Circuit, Mr. Hughes also states that he likes to go to Oxbow-Eco Center Park in Port St. Lucie, where he cannot open carry due to this law. [ECF 1-7 ¶ 16]

13. Mr. Hughes has stated he can still publicly carry at this park; however he is concerned that a small compact gun suitable for concealed carrying, which is permitted in Florida, will not be sufficient in case he has to fend off bears, alligators, and deadly snakes. Id.

14. The U.S. Fish and Wildlife Service has stated that bear spray is actually more effective for fending off bear attacks, which Mr. Hughes is not precluded from carrying with him in this park, and which would offer him protection. (See statement from U.S. FWS attached as Exhibit A).

15. Oxbow Park is located in Port St. Lucie, Florida, an area policed by the Port St. Lucie Police Department, who Mr. Hughes has chosen not to sue. Additionally, the park's website indicates that it was acquired through Environmentally Significant Lands and Save Our Rivers, which are state programs, and in cooperation with South Florida Water Management District, making the park subject to the jurisdiction of Florida Fish and Wildlife Conservation Commission (FWC). (See https://www.stlucieco.gov/departments-and-services/oxbow-eco-center).

16. Mr. Hughes has stated that he regularly attends a gun show in Port St. Lucie and, although he would not be permitted to open carry a loaded weapon regardless, would still prefer to have the gun on his holster, presumably for aesthetics or as part of a fashion statement. [ECF 1-7 ¶ 19].

17. This gun show takes place in Fort Pierce and is therefore in an area policed primarily by the Fort Pierce Police Department, who have also not been named as a party to this lawsuit. Id.

18. Mr. Hughes has also stated a desire to openly carry while pumping gas or otherwise using the facilities at the Port St. Lucie Service Plaza while driving on the Florida Turnpike [ECF 1-7 ¶ 19].

19. Enforcement of F.S. § 790.053(1) at a Florida Turnpike Service Plaza is likely to be carried out not by the SLCSO but by the Florida Highway Patrol, which has a station located at mile marker, SR-91 Florida's Tpke #145, Port St. Lucie, FL 34986, and who would have jurisdiction over this area. (See Exhibit B - listing of FHP stations)

20. A majority of Mr. Hughes' declarations amount to a generalized grievance that as a result of F.S. § 790.053(1) he cannot carry in the manner of his choosing while engaging in various activities throughout Florida. [ECF 1-7].

21. Mr. Hughes is only a member of Gun Owners of America (GOA) and merely a supporter of Gun Owners Foundation. [ECF 1-7 ¶ 3]

22. The other individuals identified in the Complaint are not named Plaintiffs or parties to this lawsuit but are merely members and/or supporters of GOA and GOF. [ECF 1-6].

23. Mr. Legget, who is only a member of GOA and not of GOF lives in Volusia County and was arrested by Daytona Beach PD for a violation of F.S. § 790.053(1) while they were responding to a report of a loose dog. [ECF 1-6 at ¶'s 17-29]. Neither Volusia County Sheriff's Office nor Daytona PD are named as parties to this lawsuit.

24. Jack McDuffie, who is only a member of GOA, lives in Hillsborough County and takes issue with open carry simply because he is under 21. [ECF 1-6 at ¶ 37; ECF 50 at pg. 2 ¶ 5]. Hillsborough County Sheriff's Office is not a party to this lawsuit.

25. Lamarre Notargiacomo lives in Indian River and cannot open carry while doing outdoor activities in that county [ECF 1-6 at ¶ 41]. Indian River County Sheriff's Office is not a party to this lawsuit.

26. Luis Valdes was arrested by Miami-Dade PD while on a motorcycle for violation of this statute. [ECF 1-6 at ¶ 43]. Miami-Dade PD is not a party to this lawsuit.

27. None of these members, on whose behalf this lawsuit was brought which seeks a state-wide injunction against the enforcement of this statute, reside in St. Lucie County. [ECF 1-6].

28. Other law enforcement agencies, including the Sheriff of Palm Beach County where Plaintiff Hughes resides, posted a similar if not identical statement addressing Florida's gun laws and concerns about open carrying, and they have not been named as parties to this lawsuit. [ECF 32-1].

29. A study shows that the following laws, ordinances, and regulations were in existence up to and including the early 20th Century (See Exhibit C - Mark Anthony Frassetto, Firearms and Weapons Legislation Up To The Early Twentieth Century (Jan. 15, 2013)).

- New Jersey: The Grants, concessions, and Original Constitutions of the Province of New Jersey, 289 (1758). An Act Against Wearing Swords, &c.,(1686): (banned) "several Persons [from] wearing Swords, Daggers, Pistols, Dirks, Stilladoes, Skeines, or any other unusual and unlawful Weapons(in public because it induced)great Fear and Quarrels Id. at pg. 19
- Virginia: A Collection of all Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as are Now in Force, 33 (Augustine Davis 1794): confirming that no person may go or ride armed by night or day, in fairs, markets, or elsewhere, or in the presence of the Court's Justices or other ministers of justice. Id. at pg. 19
- Tennessee: Tenn. Pub. Acts of 1879, chap. 186: (Carrying) publically or privately, any . . . belt or pocket pistol, revolver, or any kind of pistol, except the army or navy pistol, usually used in warfare, which shall be carried openly in hand. Id. at pg. 31
- Kansas: General Statutes of 1901, § 1003: The council may prohibit and punish the carrying of firearms or other deadly weapons, concealed or otherwise, and may arrest and imprison, fine or set at work all vagrants and persons found in said city without visible means of support, or some legitimate business. Id. at pg. 8
- Georgia: Act of Dec. 25, 1837, 1837 Ga. Laws 90. § 1: it shall not be lawful for any merchant, or vender of wares or merchandize in this State, or any other person or persons whatsoever, to sell, or offer to sell, or to keep or have about their person or elsewhere, any of the hereinafter described weapons, to wit: Bowie, or any other kind of knives, manufactured and sold for the purpose of

- wearing, or carrying the same as arms of offense or defense, pistols, dirks, sword canes, spears etc., shall also be contemplated in this act, save such pistols as are known and used, as horseman's pistols, etc. Id. at pg. 7
- Wisconsin: The Revised Statutes of the State of Wisconsin: Passed at the Annual Session of the Legislature Commencing January 13, 1858, and Approved May 17, 1858 at 985 (W.B. Keen, Chicago 1858): If any person shall go armed with a dirk, dagger, sword, pistol or pistols, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his person . . . . . Id. at pg. 24.
- 1889 Ariz. Laws, no. 13, § 1 (prohibiting the carrying of a pistol "within any settlement, town, village, or city"); 1869 N.M. Laws 312, ch. 32 § 1 ("It shall be unlawful. . .to carry deadly weapons. . .within any of the settlements of this Territory") Id. at pg. 25
- 1876 Wyo. Laws 352, ch. 52, § 1 (prohibiting a "resident of any city, town or village" from carrying a firearm "within the limits of any city, town or village") Id. at pg. 33
- 1876 Wyo. Laws 352, ch. 52, § 1 (prohibiting a "resident of any city, town or village" from carrying a firearm "within the limits of any city, town or village")
- Acts of the General Assembly of the State of Georgia Passed in Milledeville at an Annual Session in November and December, 1837: An Act to guard and protect the citizens of this State against the unwarrantable and too prevalent use of deadly weapons," assented to on the 25th December, 1837 § 1 enacts: "that it shall not be lawful for any merchant or vender of wares or merchandize in this State, or any other person or persons whatever, to sell, or to offer to sell, or to keep or to have about their persons, or elsewhere, any of the herein-after-described weapons, to wit: Bowie or any other kinds of knives, manufactured and sold for the purpose of wearing or carrying the same as arms of offence or defense; pistols, dirks, sword-canes, spears, &c., shall also be contemplated in this act, save such pistols as are known and used as horseman's pistols." Id. at pg. 21
- District Of Columbia: The Revised Code of the District of Columbia, Prepared Under the Authority of the Act of Congress, 570 (A.O.P. Nicholson, Washington 1857): If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his person . . . . Id. at pg. 21
- Massachusetts: Boston Gazette, January 16, 1809, at 2 (Ordinance in Gloucester, MA): To suppress all disturbers of the peace, and notice every abuse offered by any individual, or combination of men, patrolling our streets and wharves, having offensive weapons, either by night or day, to the annoyance and terror of the

- inhabitants; and have them apprehended and punished at the expense of the town . . . (edited for clarity). Id. at pg. 22
- Oregon: The Statutes of Oregon Enacted and Continued in Force by the Legislative Assembly, as The Session Commencing 5th December, 1853, 220 (Asahel Bush, Oregon 1854): If any persons shall go armed with dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault, injury, or other violence to his person, or to his family or property, he may, on complaint of any other person, having reasonable cause to fear an injury, or breach of the peace, be required to find sureties for keeping the peace for a term not exceeding six months, with the right of appealing as before provided. Id. at pg. 23
- Tennessee: 1821 Tenn. Pub. Act, chap. 13, at 16. Passed at the First Session of the Twenty Second General Assembly of the State of Tennessee 1837-38: Each and every person so degrading himself, by carrying a dirk, sword cane, French knife, Spanish stiletto, belt or pocket pistols . . . Shall pay a fine. Id. at pg. 24
- Virginia: 1856-57 Va. Acts, chap. 140, pt. 554, as codified in Virginia Code, tit. 54. (1873): If a person go armed with a deadly or dangerous weapon, without reasonable cause to fear violence to his person, family or property, he may be required to give a recognizance, with the right of appeal, as before provided , and like proceedings shall be had on such appeal. Id. at pg. 24

30.     For towns in the wild west era of the 19th century, such as Tombstone, Deadwood, Doge City, and Abilene, restrictive laws such as those which prohibited the open carrying of firearms were quite common. (See Exhibit D – Matt Jancer, <u>Gun Control is as Old as the Old West</u>, Smithsonian Magazine, (February 5, 2018)).

31.     In support of upholding a conviction, the North Carolina Supreme Court stated as follows:

> No man amongst us carries it about with him, as one of his every day accoutrements--as a part of his dress--and never we trust will the day come when any deadly weapon will be worn or wielded in our peace loving and law-abiding State, as an appendage of manly equipment. [ECF 57 at pg. 20]

32. South Carolina grand jury issued a statement saying: "It is apparent to every good citizen and man of sense, that any gentleman would blush and feel deeply ashamed to be caught parading the streets on a public occasion, or, for the matter of that, on a private occasion, with a revolver swinging around his neck like a powder horn, or sticking vulgarly and threateningly out of his hip pocket, making him the picture of a pirate. Id.

Respectfully Submitted,

**JACOBS SCHOLZ & WYLER, LLC**

/s/ Arthur I. Jacobs
Arthur I. Jacobs, Esq
Fla. Bar No. 108249
961687 Gateway Blvd., Suite 201-I
Fernandina Beach, FL  32034
Telephone: (904) 261-3693
Facsimile: (904) 261-7879
Primary:  filings@jswflorida.com
Secondary: Buddy@jswflorida.com

**I HEREBY CERTIFY** that a copy of the foregoing has been electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: **STEPHEN D. STAMBOULIEH, ESQUIRE,** Co-Counsel for Plaintiffs, P.O. Box 428, Olive Branch, MS 38654  [stephen@sdslaw.us]; **JAMES D. PHILLIPS, JR., ESQUIRE**, Co-Counsel for Plaintiffs, 509 W. Colonial Drive, Orlando, FL 32804 [jphillips@thefirearmfirm.com]; and **ARTHUR IVAN JACOBS, ESQUIRE,** Counsel for Defendants Bakkedahl and SAO, 961687 Gateway Boulevard, Suite 201-I, Fernandina Beach, FL 32034 [buddy@jswflorida.com] this July 8, 2025.

    <u>*s/Andrew W. Jolly*</u>
    ANDREW W. JOLLY, ESQUIRE
    Fla. Bar No. 1032793
    PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA, P.A.
    2455 E. Sunrise Boulevard, Suite 1216
    Fort Lauderdale, Florida 33304
    Telephone:(954) 462-3200
    e-mail: Andrew@purdylaw.com
       Cecilia@purdylaw.com
    Attorney for *Defendant Sheriff and St. Lucie County Sheriff's Office*
    Trial Counsel